UNITED STATES POSTAL SERVICE *v.* GREGORY

No. 00–758.   Argued October 9, 2001—Decided November 13, 2001

2

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. THOMAS, J., filed a concurring opinion, *post*, p. 11. GINSBURG, J., filed an opinion concurring in the judgment, *post*, p. 14.

*Gregory G. Garre* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson,* former *Acting Solicitor General Underwood, Acting Assistant Attorney General Schiffer, Deputy Solicitor General Clement, David M. Cohen, Todd M. Hughes, David B. Stinson, Mary Anne Gibbons, Lori J. Dym,* and *Stephan J. Boardman.*

*Henk Brands* argued the cause and filed a brief for respondent.*

JUSTICE O'CONNOR delivered the opinion of the Court.

The Civil Service Reform Act of 1978 allows eligible employees to appeal termination and other serious disciplinary actions to the Merit Systems Protection Board. 5 U. S. C. §§ 7512–7513. The Federal Circuit ruled that, when assessing the reasonableness of these actions, the Board may not consider prior disciplinary actions that are pending in collectively bargained grievance proceedings. 212 F. 3d 1296, 1298 (2000). Because the Board has broad discretion in determining how to review prior disciplinary actions and need not adopt the Federal Circuit's rule, we now vacate and remand for further proceedings.

I

Respondent Maria Gregory worked for petitioner United States Postal Service as a letter technician with responsibil-

---

*Briefs of *amici curiae* urging affirmance were filed for the American Federation of Government Employees, AFL–CIO, by *Mark D. Roth* and *Charles A. Hobbie;* for the National Association of Letter Carriers, AFL–CIO, by *Keith E. Secular;* for the National Employment Lawyers Association by *Edward H. Passman* and *Paula A. Brantner;* and for the National Treasury Employees Union by *Gregory O'Duden, Barbara A. Atkin,* and *Kerry L. Adams.*

ity for overseeing letter carriers on five mail routes, and serving as a replacement carrier on those routes. App. to Pet. for Cert. A–15. On April 7, 1997, respondent left work early to take her daughter to the doctor, ignoring her supervisor's instructions to sort the mail for her route before leaving. She received a letter of warning for insubordination. App. 47–48. Respondent filed a grievance under the procedure established in the collective bargaining agreement between her union and her employer, see generally 1998–2001 Agreement Between National Association of Letter Carriers, AFL–CIO and U. S. Postal Service, Art. 15. App. 43.

Later that same month respondent was cited for delaying the mail, after mail from another route was found in her truck at the end of the day. *Id.*, at 45–46. The Postal Service suspended her for seven days, and respondent filed a second grievance. *Id.*, at 41–42. In August 1997, respondent was again disciplined for various violations, including failing to deliver certified mail and attempting to receive unauthorized or unnecessary overtime. *Id.*, at 38–40. She received a 14-day suspension, and again filed a grievance.

While these three disciplinary actions were pending in grievance proceedings pursuant to the collective bargaining agreement, respondent was disciplined one final time. On September 13, 1997, respondent filed a form requesting assistance in completing her route or, alternatively, 3½ hours of overtime. Considering this request excessive, respondent's supervisor accompanied her on her route and determined that she had overestimated the necessary overtime by more than an hour. *Id.*, at 31–33. In light of this violation and respondent's previous violations, her supervisor recommended that she be removed from her employment at the Postal Service. *Ibid.* On November 17, 1997, the Postal Service ordered respondent's termination effective nine days later. *Id.*, at 24–29.

Because respondent previously served in the Army, she falls into the category of "preference eligible" Postal Service

employees covered by the Civil Service Reform Act of 1978 (CSRA). 5 U. S. C. § 7511(a)(1)(B)(ii). The CSRA provides covered employees the opportunity to appeal removals and other serious disciplinary actions to the Merit Systems Protection Board (Board). §§ 7512–7513. Under the CSRA, respondent could appeal her termination to the Board or seek relief through the negotiated grievance procedure, but could not do both. § 7121(e)(1). Respondent chose to appeal to the Board.

When an employing agency's disciplinary action is challenged before the Board, the agency bears the burden of proving its charge by a preponderance of the evidence. § 7701(c)(1)(B). Under the Board's settled procedures, this requires proving not only that the misconduct actually occurred, but also that the penalty assessed was reasonable in relation to it. *Douglas* v. *Veterans Admin.*, 5 M. S. P. B. 313, 333–334 (1981).

Following these guidelines, a Board Administrative Law Judge (ALJ) upheld respondent's termination, concluding that the Postal Service had shown that respondent overestimated her overtime beyond permissible limits on September 13, App. to Pet. for Cert. A–29, and that her termination was reasonable in light of this violation and her prior violations. *Id.*, at A–36 to A–40. Although the three prior disciplinary actions were the subject of pending grievances, the ALJ analyzed them independently, following the approach set forth in *Bolling* v. *Department of Air Force*, 8 M. S. P. B. 658 (1981). *Bolling* provides for *de novo* review of prior disciplinary actions unless: "(1) [the employee] was informed of the action in writing; (2) the action is a matter of record; and (3) [the employee] was given the opportunity to dispute the charges to a higher level than the authority that imposed the discipline." *Id.*, at 660–661. If these conditions are met, Board review of prior disciplinary action is limited to determining whether the action is clearly erroneous. *Id.*, at 660. After finding that respondent's three prior disciplinary ac-

tions met *Bolling*'s three conditions, the ALJ concluded that there was no clear evidence of error. App. to Pet. for Cert. A–37.

Respondent petitioned the Board for review of the ALJ's decision. While this appeal was pending, an arbitrator resolved respondent's first grievance (relating to the April 7 incident) in her favor, and ordered that the letter of warning be expunged. App. 3–16. Respondent did not advise the Board of that ruling. The Board then denied her request for review of the ALJ's determination. App. to Pet. for Cert. A–9 to A–10.

Respondent petitioned for review of the Board's decision in the United States Court of Appeals for the Federal Circuit. 5 U. S. C. § 7703(a). That court affirmed the Board's decision to uphold the ALJ's factual findings with respect to the September 13 incident. 212 F. 3d, at 1299. Taking judicial notice of the fact that one of the three disciplinary actions underlying respondent's termination had been overturned in arbitration, and noting that respondent's two remaining grievances were still pending, it reversed the Board's determination that the penalty was reasonable. *Ibid.* While recognizing that disciplinary history is an "important factor" in assessing any penalty, *id.*, at 1300, the Federal Circuit held that "prior disciplinary actions that are subject to ongoing proceedings may not be used to support" a penalty's reasonableness, *id.*, at 1298. It therefore vacated the Board's decision in part and remanded for further proceedings. *Id.*, at 1300. We granted certiorari, 531 U. S. 1143 (2001).

## II

The Federal Circuit's statutory review of the substance of Board decisions is limited to determining whether they are unsupported by substantial evidence or are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U. S. C. § 7703(c). Like its counterpart in the Administrative Procedure Act, 5 U. S. C. § 706(2), the arbi-

trary and capricious standard is extremely narrow, *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U. S. 402, 416 (1971), and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions. It is not for the Federal Circuit to substitute its own judgment for that of the Board. *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983). The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute. We conclude that the Board need not adopt the Federal Circuit's rule in order to meet these standards.

The Postal Service argues that the Board's independent review of prior disciplinary actions is sufficient to meet its statutory obligations. The adequacy of the Board's particular review mechanism—*Bolling* review, see *Bolling* v. *Department of Air Force, supra*—is not before us. The Federal Circuit said nothing about *Bolling*, instead adopting a sweeping rule that the Board may never rely on prior disciplinary actions subject to ongoing grievance procedures, regardless of the sort of independent review the Board provides. Respondent likewise asks this Court only to uphold the Federal Circuit's rule forbidding independent Board review. She does not seek a ruling requiring a different Board review mechanism, nor did she do so before the Federal Circuit. Her brief in that court mentioned neither *Bolling* nor its standard, arguing only that the Board should hold off its review altogether pending the outcome of collectively bargained grievance proceedings. Brief for Petitioner in No. 00–3123 (CA Fed.), p. 2. Moreover, even if the adequacy of *Bolling* review were before us, we lack sufficient briefing on its specific functioning in this case. We thus consider only whether the Board may permissibly review prior disciplinary actions subject to ongoing grievance procedures independently, not whether the particular way in which it does so meets the statutory standard.

There is certainly nothing arbitrary about the Board's decision to independently review prior disciplinary violations. Neither the Federal Circuit nor respondent has suggested that the Board has applied this policy inconsistently—indeed, the Board has taken this same approach for 19 years. See *Carr* v. *Department of Air Force*, 9 M. S. P. B. 714 (1982). Nor have they argued that the Board lacks reasons for its approach. Following the Federal Circuit's rule would require the Board either to wait until challenges to disciplinary actions pending in grievance proceedings are completed before rendering its decision, or to ignore altogether the violations being challenged in grievance in determining the reasonableness of the penalty. The former may cause undue delay. See Reply Brief for Petitioner 6–7. The latter would, in many cases, effectively preclude agencies from relying on an employee's disciplinary history, which the Federal Circuit itself acknowledged to be an "important factor" in any disciplinary decision. 212 F. 3d, at 1300.

Nor is independent review by the Board contrary to any law. The Federal Circuit cited no provision of the CSRA or any other statute to justify its new rule. *Id.*, at 1299–1300. At oral argument in this Court, respondent's counsel pointed to the Federal Circuit's statement that, if pending grievances were later overturned in arbitration, "the foundation of the Board's *Douglas* analysis would be compromised." Tr. of Oral Arg. 49; 212 F. 3d, at 1300 (citing *Douglas* v. *Veterans Admin.*, 5 M. S. P. B. 313 (1981)). The Board's *Douglas* decision set out a general framework for reviewing agency disciplinary actions. Because *Douglas* at one point specifically discussed 5 U. S. C. § 7701(c)(1)(B), the CSRA provision placing the burden of proof on the employing agency to justify its disciplinary action, counsel claimed, the Federal Circuit must have thought the Board's policy violates that section. Tr. of Oral Arg. 49. We do not read the Federal Circuit's citation of *Douglas* as an implicit reference to § 7701(c)(1)(B), particularly given that the Federal Circuit's opinion nowhere

mentions that section's standard. Rather, we interpret the Federal Circuit's reference to *Douglas* as a way of describing the entire process of Board review of disciplinary actions.

More importantly, any suggestion that the Board's decision to independently review prior disciplinary actions violates § 7701(c)(1)(B)'s preponderance of the evidence standard would be incorrect. To the extent that that standard places the burden upon employing agencies to justify all of the violations—including those dealt with in prior disciplinary actions—that are the basis for the penalty, the Board has its own mechanism for allowing agencies to meet that burden. Insofar as *Bolling* review is adequate to meet this burden of proof, an employing agency may meet its statutory burden to justify prior actions by prevailing either in grievance or before the Board.

*Amicus* National Treasury Employees Union (NTEU) argues that independent Board review of prior disciplinary actions pending in grievance violates the CSRA's general statutory scheme. Brief for National Treasury Employees Union as *Amicus Curiae* 8–12. Employees covered by the CSRA may elect Board review only for disciplinary actions of a certain seriousness, such as termination, suspension for more than 14 days, or a reduction in grade or pay. 5 U. S. C. §§ 7512–7513. For more minor actions, workers may only seek review through negotiated grievance procedures, if they exist. § 7121. According to NTEU, this scheme deprives the Board of the statutory authority to review minor disciplinary actions like the three that were pending in this case. It is true that the CSRA contemplates that at least some eligible employees (those represented by unions) will have two different forums for challenging disciplinary actions, depending in part on their seriousness. If the Board had attempted to review respondent's first disciplinary action before she was terminated, it would have exceeded its statutory authority. In this case, however, the Board was asked to review respondent's termination, something it

clearly has authority to do. §§ 7512–7513. Because this termination was based on a series of disciplinary actions, some of which are minor, the Board's authority to review the termination must also include the authority to review each of the prior disciplinary actions to establish the reasonableness of the penalty as a whole.

Independent Board review of disciplinary actions pending in grievance proceedings may at times result in the Board reaching a different conclusion than the arbitrator. It may also result in a terminated employee never reaching a resolution of her grievance at all, because some collective bargaining agreements require unions to withdraw grievances when an employee's termination becomes final before the Board. Brief for Respondent 10–11, 37; Reply Brief for Petitioner 14. Rather than being inconsistent with the statutory scheme, however, these possibilities are the result of the parallel structures of review set forth in the CSRA.

Such results are not necessarily unfair. Any employee who appeals a disciplinary action to the Board receives independent Board review. If the Board's mechanism for reviewing prior disciplinary actions is itself adequate, the review such an employee receives is fair. Although the fairness of the Board's own procedure is not before us, we note that a presumption of regularity attaches to the actions of Government agencies, *United States* v. *Chemical Foundation, Inc.*, 272 U. S. 1, 14–15 (1926), and that some deference to agency disciplinary actions is appropriate.

## III

Although the Board independently reviews prior disciplinary actions pending in grievance, it also has a policy of not relying upon disciplinary actions that have already been overturned in grievance proceedings at the time of Board review. See *Jones* v. *Department of Air Force,* 24 MSPR 429, 431 (1984). As one of respondent's disciplinary actions was overturned in arbitration before the Board rendered its

decision, the Postal Service concedes that a remand to the Federal Circuit is necessary to determine the effect of this reversal on respondent's termination. Reply Brief for Petitioner 15–16.

The judgment of the United States Court of Appeals for the Federal Circuit is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, concurring.

While I join the Court's opinion as far as it goes, it does not go far enough. The Court concludes that the adequacy of the mechanism the Merit Systems Protection Board used to review prior disciplinary actions pending in collectively bargained grievance proceedings (the so-called *Bolling* framework) is a question "not before us." *Ante,* at 7. I think it is.

The Federal Circuit below held that the Board, in assessing the reasonableness of petitioner's decision to terminate respondent, abused its discretion by relying upon prior disciplinary actions that were pending in collectively bargained grievance proceedings. 212 F. 3d 1296, 1300 (2000).

Petitioner now contests the Federal Circuit's holding by arguing that the Board's consideration of prior disciplinary actions subject to pending grievances does not constitute an abuse of discretion because the Board's use of the *Bolling* framework, see *Bolling* v. *Department of Air Force,* 8 M. S. P. B. 658 (1981), provides employees with more than adequate procedural safeguards.[1] Brief for Petitioner 27–28. Respondent, by contrast, counters that the *Bolling* framework not only is *insufficient* to prevent the "unfair-

---

[1] Petitioner's argument is certainly quite relevant here as the Board Administrative Law Judge below considered prior disciplinary actions in respondent's case pursuant to the *Bolling* framework. See *ante,* at 5–6; App. to Pet. for Cert. A–36 to A–37.

ness" inherent in the Board's consideration of prior disciplinary actions subject to pending grievances, but also is *inconsistent* with the agency's statutory burden to show that its decision is supported by a "preponderance of the evidence." See Brief for Respondent 34–37. Properly disposing of this case requires that we address these arguments.[2]

This is not a difficult task because the *Bolling* framework provides federal employees with more than adequate procedural safeguards. Title 5 U. S. C. § 7503(b), for instance, sets forth the basic procedural protections to which employees receiving minor discipline are entitled pursuant to the Civil Service Reform Act of 1978 (CSRA).[3] Conspicuously absent from the statutory provision is any opportunity to appeal a minor disciplinary action to the Board. Thus, as petitioner points out, "it can hardly be said that the *Bolling* framework for collateral review of prior discipline conflicts with the CSRA, when Congress chose not to provide for *any* [Board] review of minor disciplinary actions." See Reply Brief for Petitioner 12–13 (emphasis in original).

Respondent's argument that the *Bolling* framework conflicts with the "preponderance of the evidence" standard set forth in 5 U. S. C. § 7701(c)(1)(B) is also unavailing. The logical consequence of respondent's position is that the Board

---

[2] The Court accurately notes that respondent's brief in the Federal Circuit merely argued that the Board erred by relying upon prior disciplinary actions and nowhere mentioned the *Bolling* framework. See *ante*, at 7. Petitioner, however, has put the *Bolling* framework squarely into play by relying upon it to support its contention that the Board's practice of considering prior disciplinary actions is not an abuse of discretion. Given that petitioner, in defending the Board's practice, raises the *Bolling* framework for the first time in this Court, respondent surely has not waived her right to argue that the protections provided by the *Bolling* framework are inadequate to save the practice invalidated by the Federal Circuit.

[3] This statutory provision applies to suspensions for 14 days or less. 5 U. S. C. § 7503(a). Respondent's prior disciplinary actions pending in grievance proceedings fall into this category.

would be required to review *de novo* all facts supporting all prior disciplinary actions relied upon by an agency to justify the reasonableness of a penalty, whether or not the prior actions were ever grieved.[4]   Nothing in the CSRA supports this rather remarkable proposition.   At most, the statute requires an agency to prove the existence of prior disciplinary actions; it does not place the burden on the agency to prove the facts underlying those actions.

The central flaw in the Federal Circuit's decision is that it. relies on the mistaken assumption that the Board's review process and collectively bargained grievance proceedings are somehow linked.   212 F. 3d, at 1300.   This assumption is not supported by the CSRA.   Under the statute, the Board's review process and collectively bargained grievance procedures constitute entirely separate structures.   As a result, the Board need not wait for an employee's pending grievances to be resolved before taking account of prior disciplinary actions in its assessment of the reasonableness of a penalty given in a subsequent disciplinary action.[5]

---

[4] JUSTICE GINSBURG's suggestion to the contrary, see *post*, at 16, n. 2 (opinion concurring in judgment), rests on the assumption that the Board's review process and collectively bargained grievance proceedings are somehow linked.   As explained *infra* this page, such an assumption is erroneous.   Title 5 U. S. C. §7701(c)(1)(B) either requires an agency to prove by a preponderance of the evidence all facts supporting all prior disciplinary actions relied upon by an agency or it does not.   Whether an employee has chosen to access collectively bargained grievance proceedings with respect to a prior disciplinary action is irrelevant to answering this question.   Indeed, JUSTICE GINSBURG's reasoning still suggests that the Board must review *de novo* all facts supporting all prior minor disciplinary actions relied upon by agencies in cases where employees are not represented by a union as such employees have no ability to access collectively bargained grievance proceedings.   Such a requirement, however, is nowhere to be found in the CSRA.

[5] Neither would it be, as JUSTICE GINSBURG intimates, "arbitrary and capricious" for the Board to disregard an arbitrator's reversal of a prior disciplinary action.   *Post*, at 15 (opinion concurring in judgment).   Such

For these reasons, I agree with the Court's decision to vacate the judgment of the Federal Circuit and remand for further proceedings.[6]

JUSTICE GINSBURG, concurring in the judgment.

Although I join the Court's judgment, I do so on grounds not stated in the Court's opinion. I note first that under *Bolling* v. *Department of Air Force*, the Board's review of prior disciplinary actions pending in negotiated grievance proceedings requires, in cases like this one, only that the Board determine whether an agency action was "clearly erroneous." 8 M. S. P. B. 658, 660 (1981). This summary and highly deferential standard is arguably inconsistent with the statutory requirement that the Board sustain a decision of an agency "only if . . . [it] is supported by a preponderance of the evidence." 5 U. S. C. § 7701(c)(1)(B). The Court maintains that the adequacy of *Bolling* review to meet

---

an argument, like the Federal Circuit's holding below, rests on the erroneous premise that the CSRA inextricably ties together the Board's review process and collectively bargained grievance proceedings. To be sure, the Board has *chosen* to link its review to collectively bargained grievance proceedings—at least to some extent—by adopting a policy of not relying upon disciplinary actions that have been reversed through grievance proceedings. Cf. *Jones* v. *Department of Air Force*, 24 MSPR 429, 430–431 (1984). But the Board is not required to do so. Neither JUSTICE GINSBURG nor the Federal Circuit cites any statutory provision mandating that the Board must take this step. The CSRA simply establishes no link between the Board's review process, which is designed to protect an employee's statutory rights, and grievance proceedings, which adjudicate rights secured through collective-bargaining agreements. As the Court points out: "Independent Board review of disciplinary actions . . . may at times result in the Board reaching a different conclusion than the arbitrator." *Ante*, at 10.

[6] Given the Board's stated policy of not relying upon disciplinary actions that have already been overturned in grievance proceedings at the time of Board review, see n. 5, *supra*, I agree that a remand is necessary for the Federal Circuit to consider the relevance of the fact that one of respondent's prior disciplinary actions had already been reversed when the Board finalized its review of her case.

§ 7701(c)(1)(B)'s preponderance of the evidence standard is a question "not before us." *Ante,* at 7, 10. In light of the unsettled issue, however, I would place no reliance upon the Board's "independent review" of prior discipline, see *ante,* at 7, 8, in this case. Nevertheless, I do not resist the Court's remand order for the reasons set out below.

MSPB regulations allow the Board to reopen an appeal and reconsider its decision "at any time." 5 CFR § 1201.118 (2001) ("The Board may reopen an appeal and reconsider a decision of [an administrative judge] on its own motion at any time, regardless of any other provisions of this part."). There is every reason to believe that the Board would reopen to reconsider a decision that credited a prior disciplinary action later overturned in arbitration. See *Jones* v. *Department of Air Force,* 24 MSPR 429, 431 (1984) (suspension "reversed by grievance . . . was effectively cancelled and thus should not be considered in determining a reasonable penalty for the current charge").[1] Notably, the Postal Service agrees that the Board may invoke its provision for reopening "in the event that the employee's prior disciplinary record has been revised as the result of a successful grievance." Brief for Petitioner 28; see also Tr. of Oral Arg. 22 (counsel for the Postal Service confirmed Service's recognition that "the [B]oard's regulations permit the [B]oard to reopen any case at any time to reconsider it in light of a grievance which may have proved successful").

Indeed, it might well be "arbitrary and capricious" in such a situation for the Board to disregard the employee's revised record and refuse to reopen. Cf. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4433, p. 311 (1981) (a "judgment based upon the preclusive effects of [a prior] judgment should not stand if the [prior] judgment is

---

[1] The Board thus comprehends the two schemes—its own review, and arbitration under the bargained-for grievance procedure—as harmonious and not, as JUSTICE THOMAS does, *ante,* at 13 (concurring opinion), as entirely unrelated to each other.

reversed"); *id.*, at 312–315; Restatement (Second) of Judgments § 16 and Comment *c* (1982) (nullification of an earlier judgment on which a subsequent judgment relied "may be made the ground for appropriate proceedings for relief from the later judgment with any suitable provision for restitution of benefits that may have been obtained under that judgment"); *id.*, § 84 (generally, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court").[2]

Gregory did not bring to the Board's attention her successful grievance of the Postal Service's first disciplinary action, *i. e.*, a letter of warning dated May 13, 1997, based on the April 7, 1997, incident, see *ante*, at 4; App. 43, 47–48. Under the MSPB's regulations, she may even now ask the Board to reopen based on the expungement of that action, or the Board may reopen "on its own motion." 5 CFR § 1201.118 (2001); see Tr. of Oral Arg. 26 (counsel for the Postal Service acknowledged that successful grievance of first disciplinary action "could have been brought to the attention of the [B]oard and still could be today"). Gregory may also bring to the Board's attention any revision resulting from success-

---

[2] JUSTICE THOMAS suggests, *ante*, at 12–13 (concurring opinion), that Gregory's argument would logically require the Board to review *de novo* any prior disciplinary action upon which the employer relied in removing an employee, "whether or not the prior actions were ever grieved." Failure to pursue an available grievance procedure or other avenue of appeal, however, would end the matter. It is well settled that one who fails timely to appeal an adverse decision is bound by that decision in later proceedings. See, *e. g.*, *New Haven Inclusion Cases*, 399 U. S. 392, 481 (1970) (holding that a party who "took no appeal" from an adverse order is "foreclosed by *res judicata*" from later seeking relief inconsistent with that order); see also 18 Wright, Miller, & Cooper, § 4433, at 305 ("preclusion cannot be defeated by electing to fo[r]go an available opportunity to appeal"); *id.*, at 305–308; Restatement (Second) of Judgments § 83 and Comment *a*, § 84 and Comment *e* (in general, administrative adjudications and arbitration awards have the same preclusive effects as court judgments).

ful grievances of the Postal Service's second and third disciplinary actions, *i. e.*, the seven-day suspension ordered on June 7, 1997, see *ante*, at 4; App. 41–42, 45–46, and the fourteen-day suspension ordered on August 7, 1997, see *ante*, at 4; App. 38–40.

Gregory asserts that the Postal Service resists arbitration of her second and third grievances on the ground that under the collective-bargaining agreement between the Postal Service and her union, predischarge grievances do not survive a discharge which has been made final. Brief for Respondent 10–12, and n. 5, 26–27. She does not suggest, however, that the union is disarmed from bargaining for postdischarge continuation of grievances through to completion of arbitration.[3]

Gregory, moreover, elected to resort to the MSPB "[a]t the advice of her then-counsel." *Id.*, at 9. She could have asked her union to challenge her dismissal before an arbitrator.[4] Had she and her union opted for arbitration rather than MSPB review of the dismissal, she might have fared better; it appears that a labor arbitrator, in determining the reasonableness of a penalty, would have accorded no weight to prior discipline grieved but not yet resolved by a completed arbitration. See *Arbitration Between National Assn. of Letter Carriers, AFL–CIO, and USPS*, Case No. E94 N–4E–D 96075418, pp. 16–18 (Apr. 19, 1999) (Snow, Arb.), Lodging of Respondent 57–59 (referring to parties' "past practice of giving unresolved grievances no standing in removal hearings," arbitrator granted a continuance

---

[3] At oral argument counsel for the Postal Service sought to "make clear" that "if this Court reverses the decision [of the Federal Circuit]," the Service "would not object to the continuance of [a] grievance." Tr. of Oral Arg. 55.

[4] Grievances "may be appealed to . . . arbitration" only "by the certified representative of the Union." 1998–2001 Agreement Between National Association of Letter Carriers, AFL–CIO and U. S. Postal Service, Art. 15, § 4(A)(2).

"pending resolution of an underlying disciplinary grievance"); *Arbitration Between USPS and National Assn. of Letter Carriers, AFL–CIO,* Case No. D90 N–4D–D 95076768, pp. 19–21 (Mar. 20, 1996) (Sickles, Arb.), Lodging of Respondent 27–29 (although employing agency need not await resolution of prior grievances before ordering an employee's removal, an arbitrator may not take account of prior discipline until the appeals process has yielded a final resolution); *Arbitration Between USPS and National Post Office Mail Handlers,* Case No. MC–S–0874–D, p. 7 (June 18, 1977) (Fasser, Arb.), Lodging of Respondent 7 ("Until th[e] appeal [of a prior disciplinary action] is finally adjudicated, it has no standing *in* this proceeding." (emphasis added)). Gregory, having at her own option forgone arbitration proceedings, in which prior discipline could not weigh against her while grievances were underway, is not comfortably situated to complain that the procedure she elected employed a different rule.

Given (1) the Board's reopening regulation, (2) the alternative arbitration forum Gregory might have pursued, (3) the Court's explicit reservation of the question of "the adequacy of *Bolling* review," *ante,* at 7, 10, and (4) the apparent, incorrect view of the Federal Circuit that the Postal Service itself could not take account of prior disciplinary action that is the subject of a pending grievance proceeding, see 212 F. 3d 1296, 1299, 1300 (2000),[5] I agree that a remand is in order.

---

[5] The petition for certiorari and the brief for petitioner state the question presented as follows: "Whether a federal *agency,* when disciplining or removing an employee for misconduct pursuant to the Civil Service Reform Act of 1978, 5 U. S. C. § 1101 *et seq.,* may take account of prior disciplinary actions that are the subject of pending grievance proceedings." Pet. for Cert. (I); Brief for Petitioner (I) (emphasis added).