**James J. MATTICE, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
**Respondent.**

No. 03–3277.

United States Court of Appeals,
Federal Circuit.

DECIDED: Feb. 5, 2004.

Before GAJARSA, LINN, and PROST, Circuit Judges.

PER CURIAM.

James J. Mattice seeks a review of final decision of the Merit Systems Protection Board ("MSPB" or "Board"), affirming the Office of Personnel Management's ("OPM's") denial of his reconsideration request concerning OPM's calculation of the portion of his retirement annuity payable to his former spouse. Because we find that MSPB's decision was not supported by substantial evidence and contrary to law, we *reverse*.

## BACKGROUND

James J. Mattice, petitioner, and Deanne Lewis were married on April 27, 1957, and divorced on January 27, 1982. Mr. Mattice was employed by the federal government at all times during his marriage. Upon the divorce, the Ohio Court of Common Pleas entered a dissolution decree that gave Ms. Lewis an interest in Mr. Mattice's retirement benefits. Specifically the decree provided that upon retirement:

> The Wife shall receive [a] portion of [the Husband's] retirement benefits which shall be determined as follows: One half (1/2) of the ratio of said 23 years [of marriage] divided by the total number of years of Federal Civil Service of the Husband.

*Mattice v. Mattice*, No. DM–81–2235 at ¶ 21 (Ohio Ct.Com.Pl. Jan. 27, 1982).

In 1997, Mr. Mattice retired from the Civil Service, after approximately 40 years

of service. Between the time of his divorce and retirement, Mr. Mattice had received several promotions and pay raises. Because of these advancements, Mr. Mattice's retirement benefits were significantly higher than what they would have been had he remained at the same position and/or salary that he held at the time of his divorce.

Upon his retirement, Petitioner became involved in a dispute with his ex-wife regarding the proportion of the retirement benefit due her under the dissolution decree. Mr. Mattice argued that Ms. Lewis' share should be calculated based upon the average of three highest pay years *during the marriage*, while Ms. Lewis argued that her share should be calculated based upon the average of Mr. Mattice's three highest pay years during his *entire career*.

On November 21, 1997, an Ohio Magistrate approved a stipulated qualified domestic relations order ("QDRO") that entitled Ms. Lewis to a ratio of Mr. Mattice's annuity based upon the average of his three highest pay years during his career. *See Mattice–Lewis v. Mattice*, No.1981–DM–02235 at 3 (Ohio Ct.Com.Pl. Nov. 21, 1997). The QDRO provided that Ms. Lewis is entitled to the fraction of the "gross monthly annuity" to be computed as follows: "one-half (½) of the ratio of marital years, twenty-three, divided by total years of [Mr. Mattice's] creditable service times [his] high three average pay years." *Id.* The Ohio Court of Common Pleas and the Ohio Court of Appeals upheld the Magistrate's decision.

In February 2000, Ms. Lewis filed a motion for contempt in the Ohio Court of Common Pleas alleging that Mr. Mattice failed to file the QDRO with the OPM, and that he failed to turn over to her the monies to which she was entitled. The Magistrate decided that Ms. Lewis was and is entitled to ".2875 [28.75%] of mov-ant's [Mattice's] *monthly annuity payment.*" *Mattice–Lewis v. Mattice*, No. 1981–DM–02235 at 5 (Ohio Ct.Com.Pl. Apr. 10, 2000) (emphasis added). The Magistrate then ordered that the motion for contempt be withdrawn without prejudice, and further ordered that Mr. Mattice pay Ms. Lewis 28.75% (one-half times 23 years of marriage divided by 40 years of creditable service) of the annuity monies he received from 1997 through 1999. The Court further ordered that Ms. Lewis be continued to be paid directly by the OPM in the future. *Id.* at 8–9. This order provided that Ms. Lewis was to receive 28.75% of Mr. Mattice's monthly annuity payments. *Id.* at 5.

Once again, Mr. Mattice appealed. On appeal Mr. Mattice raised two issues. First, he again contested that Ms. Lewis' share should be based on the average of the three high pay years during marriage. Second, he argued that even under the QDRO as entered, the OPM miscalculated the amount due Ms. Lewis. Mr. Mattice alleged that the OPM calculated Ms. Lewis' share to be 28.75% of the average of his *salary* during three high pay years, as opposed to 28.75% of his *monthly annuity* based on that salary. The Ohio Court of Appeals denied Mr. Mattice's appeal as to his first argument ruling that in light of the previous case history the subject matter of the appeal is *res judicata*. *See Mattice v. Mattice*, No. 18629, at 5–6, 2001 WL 726780 (Ohio Ct.App. June 29, 2001). The Court also denied Mr. Mattice's appeal with respect to OPM's alleged calculation mistake, stating that "to the extent Mattice is actually arguing that the Office of Personnel Management (OPM) is paying too large a percentage of his retirement annuity to his ex-wife ... he should pursue that matter administratively with OPM." *Mattice v. Mattice*, No. 18629, at 2

(Ohio Ct.App. Aug. 2, 2001) (denying motion to reconsider).

Mr. Mattice then filed a request with OPM to correct its erroneous decision awarding Ms. Lewis 28.75% of the average of his *salary* during three high pay years (which amounts to roughly 40% of the monthly annuity), as opposed to 28.75% of his *monthly annuity* based on that salary. OPM denied the request. Mr. Mattice appealed to the MSPB, which affirmed the denial. The MSPB judge concluded that QDRO conflicts with the original dissolution decree, and that in the face of such conflict the OPM is obligated to follow the most recent court order. *Mattice v. OPM*, No. CH–0831–02–0212–I–1 at 3, 94 M.S.P.R. 483, 2003 WL 21516809 (M.S.P.B. June 20, 2002) (citing 5 C.F.R. § 838.134(a)(2)). The full Board denied Mr. Mattice's motion for review on June 20, 2003. Mr. Mattice now appeals to this Court claiming that OPM miscalculated the portion of his retirement benefits due his ex-wife. We have jurisdiction from a final decision of the MSPB pursuant to 28 U.S.C. S 1295(a)(9).

## STANDARD OF REVIEW

The Federal Circuit's review of the MSPB's decisions "is limited to determining whether they are unsupported by substantial evidence or are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" 5 U.S.C. § 7703(c); *USPS v. Gregory*, 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001).

## DISCUSSION

OPM is obliged to carry out decisions of the state courts with respect to property division incident to divorce, annulment, and separation decrees. *See* 5 U.S.C. § 8345(j)(1). OPM may not review these decisions for correctness; it is merely obliged to carry them out as written. *See* 5 C.F.R. § 838.101(2) ("In executing court orders under this part, OPM must honor the clear instructions of the court. . . . In carrying out the court's instructions, OPM performs purely ministerial actions . . . .")

In the case at hand, OPM was faced with a court order that specifically and unambiguously stated that Ms. Lewis is entitled to ".2875 [28.75%] of movant's [Mattice's] *monthly annuity payment.*" *Mattice–Lewis v. Mattice*, No. 1981–DM–02235 at 5 (Ohio Ct.Com.Pl. Apr. 10, 2000) (emphasis added). The Ohio courts calculated the amount due Ms. Lewis based on this formula. *See id.* at 7–8. Yet, the OPM erroneously calculated the portion of Mr. Mattice's annuity due Ms. Lewis by using the language of the QDRO relating to the fraction which is to be applied to the monthly annuity. Based upon this error OPM awarded Ms. Lewis 28.75% of the average of Mr. Mattice's *salary* during his three high pay years.

OPM claims that its decision is based on the QDRO and the opinion of the Ohio Court of Appeals. The argument is not persuasive. First, the definitive interpretation of the QDRO by the Ohio courts is unambiguous. The Ohio Court of Appeals in its December 1998 decision stated that Ms. Lewis is entitled to "28.75 *per cent* of the total." *Mattice v. Mattice*, No. 17157, at 6, 1998 WL 879208 (Ohio Ct.App. Dec. 18, 1998) (emphasis in original). In the previous paragraph, the Court specified that "total" means "*total pension benefits.*" *Id.* (emphasis added). Nowhere does the Court contemplate that Ms. Lewis is entitled to 28.75% of Mr. Mattice's former salary.

Moreover, in subsequent litigation, the Ohio Court of Common Pleas confirmed that Ms. Lewis' share is ".2875 of [Mattice's] *monthly annuity payment.*" *Mattice–Lewis v. Mattice*, No. 1981–DM–02235 at 5 (Ohio Ct.Com.Pl. Apr. 10, 2000) (emphasis added). In calculating Ms. Lewis' share for years 1997–1999, the Ohio court

used this formula. The formula also applies for all subsequent years.

OPM argues that the language "times the average high three (3) pay years during the marriage," *see supra*, requires it to award Ms. Lewis 28.75% of Mr. Mattice's former salary. The language referred to by OPM is the fraction that is to be applied to the gross monthly annuity. This proposition is clear and is reinforced by the statements made by Ohio trial and appellate courts. Having reviewed the decisions of the Ohio courts interpreting the QDRO, we are left with a conclusion that the QDRO awards Ms. Lewis 28.75% of Mr. Mattice's annuity benefit. The MSPB's decision concluding otherwise is unsupported by substantial evidence, and contrary to its own regulation.

### CONCLUSION

For the foregoing reasons, we reverse the MSPB's decision, and remand for further proceedings not inconsistent with this opinion.

Costs to the petitioner.