NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-1235
———

MARLA W. HUNTER
                                        Appellant

v.

MARK FILIP, Acting Attorney General, U.S. Department of Justice
———

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 1-09-cv-00758)
District Court Judge: Honorable Noel L. Hillman

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2013

Before:  HARDIMAN and GARTH, *Circuit Judges*, and STARK, *District Judge**

(Filed: February 15, 2013)

———

OPINION OF THE COURT
———

GARTH, *Circuit Judge*.

---

* The Honorable Leonard P. Stark, District Judge for the United States District Court for the District of Delaware, sitting by designation.

The appellant, Marla W. Hunter, appeals from the decision of the District Court granting summary judgment in favor of the defendant, Acting Attorney General Mark Filip, with respect to Hunter's claims that her employment at the Federal Bureau of Prisons (BOP) was unlawfully terminated. Specifically, Hunter claims that her termination represented unlawful retaliation for a previous Equal Employment Opportunity (EEO) complaint she had filed. Further, she claims that the termination decision was not supported by substantial evidence.

We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm the District Court's decision.

I

We write principally for the benefit of the parties and recite only the facts essential to our disposition. The appellant began her employment in the BOP in 1996. Between 1996 and 2001 she worked at the Federal Correctional Institute (FCI) in Fairton, New Jersey, first as a secretary and then as a maintenance worker supervisor. Her duties included supervising inmates performing maintenance and cleanup tasks. Among Hunter's supervisees was an inmate named Michael Giannone.

In or around 1999, while working at FCI Fairton, Hunter filed an EEO complaint alleging harassment and unfair treatment based on her status as a woman and a minority (black). Hunter also filed a lawsuit in this connection. At some point, Hunter returned to her previous secretarial position.

In 2001, Hunter transferred to an FCI in Fort Dix, New Jersey, as a maintenance worker supervisor. In late 2003, a letter containing information about Hunter was

2

discovered in the course of screening Inmate Giannone's mail. This discovery led to an investigation of Hunter for possibly engaging in impermissible communication with Giannone and to Hunter being reassigned to a position as an information receptionist. In 2004, the investigative report concluded that the allegation that Hunter had engaged in an inappropriate relationship with an inmate was substantiated, notably by Hunter's admission that she authored ten letters containing personal information that had been received by Giannone.

Several months later, Hunter received a notice of proposed removal. The letter listed seven charges, including a charge that Hunter had inappropriate relationships with an inmate (Giannone) and an inmate's family (Giannone's sister-in-law and aunt); that she failed to report these contacts; that she made an unauthorized dissemination of information (Hunter informed Giannone's sister-in-law of his disciplinary status); and that she released information that could breach institutional security (Hunter informed Giannone of disruptions and other events at Fort Dix).

On the basis of these charges, Warden Charles J. DeRosa subsequently terminated Hunter's employment at FCI Fort Dix. In a Decision Notice announcing Hunter's termination, DeRosa expressed concern that, among other things, Hunter's actions had destroyed her credibility and effectiveness as a correctional worker, had compromised her integrity and neutrality, and had implicated institutional security. The notice expressly noted and weighed a number of factors bearing on the appropriate sanction and concluded that, although Hunter's past work record was acceptable and she had no

disciplinary history, the seriousness of the offense, and the resulting loss in confidence in Hunter's ability to carry out her duties as an employee, warranted dismissal.

Hunter responded by filing a grievance with the BOP regarding her removal. She alleged, inter alia, that the removal was a result of her having engaged in prior activities protected under Title VII, that the charges were unsupportable, and that her due process rights had been violated. The Regional Director of the Northeast Regional Office of the BOP rejected this grievance, and Hunter invoked her right to arbitrate the dispute. After arbitration, the arbitrator likewise determined that Hunter's termination was not shown to be motivated by discriminatory animus, that Hunter was guilty of the charges (to which she largely admitted), and that termination was neither an excessive nor an unreasonable sanction. This decision was subsequently upheld on review first by the Merit Systems Protection Board (Board) and then by the Equal Employment Opportunity Commission (EEOC).

Hunter then brought the present action in the District Court for the District of New Jersey seeking a trial de novo with respect to her discrimination claim and review of the administrative record with respect to the Board's upholding of the arbitrator's decision concerning the appropriateness of termination. See 5 U.S.C. § 7703(c). The sole documentary evidence Hunter provided concerning her discrimination claim was a memorandum from the human resources manager at FCI Fort Dix to the deputy chief of

4

labor management relations at BOP concerning the appropriateness of removal and referencing Hunter's prior EEO complaint.[1]

Upon the defendant's motion for summary judgment, the District Court on April 26, 2011, granted the motion, concluding that "nothing in the record sufficiently demonstrates, as a matter of law, the causal connection between Hunter's protected activity and her termination," and accordingly that Hunter failed to establish a prima facie case of discrimination. The District Court further determined that even if Hunter could make out a prima facie case, the reasons for termination articulated by Warden DeRosa were legitimate and non-discriminatory, and Hunter failed to present enough evidence to raise a material question of fact concerning whether these reasons were pretextual.

On review of the administrative record, the District Court further concluded that "the agency based its decision on substantial evidence and drew reasonable conclusions from that evidence" and "was not arbitrary or capricious, achieved through improper procedures, or predicated upon either a discriminatory basis or, alternatively, a total absence of evidence."

---

[1] The memo reads: "The Warden asked me to contact you to see how you felt about [the] case I just faxed you. It involves an employee who transferred here from Fairton, and over the past 2 years has maintained a relationship with a Fairton inmate via mail. The Warden would like to know if you feel there is enough to recommend removal. He would also like to know if you feel we should temporarily assign to a position with no inmate contact until this is resolved. This is a sensitive case because she has a prior EEO complaint against staff at Fairton, and OIA was aware of this when they conducted the investigation and her interview on Tuesday, 1/13/04. As always thank-you very much for your help."

Hunter then filed a motion to alter the judgment, which on December 15, 2011, the District Court denied. This timely appeal followed.

II

We begin by addressing Hunter's Title VII discrimination claim.[2] On plenary review of the District Court's summary judgment in this respect, we must construe all facts in the light most favorable to Hunter as the non-moving party, and "[i]f a reasonable jury could find for her, we must reverse." Jensen v. Potter, 435 F.3d 444, 448 (3d Cir. 2006).

Analysis of a Title VII retaliation claim begins with the question of whether the plaintiff has established a *prima facie* case. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (citation and internal quotation marks omitted). In the present case, there is no dispute that Hunter engaged in protected activity through her 1999 EEO complaint or that Hunter's termination qualifies as an adverse employment action. The question we must resolve is whether there is evidence supporting a causal link between these events.

---

[2] Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

As the District Court properly concluded, under the facts of this case, any inference of retaliation "is too tenuous and attenuated to prove a prima facie case." First, this Court has recognized that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events" unless the timing is "unusually suggestive" of discrimination. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997) abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Here, there is no close temporal link between Hunter's complaint and her dismissal from a separate correctional facility some five years later, so the sequence of facts alone will not suffice to show retaliation.

This defect alone does not resolve the case, however. "When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." Krouse, 126 F.3d at 503-04. Hunter contends that the memorandum from the human resources manager at FCI Fort Dix to the deputy chief of labor management relations at BOP indicating that DeRosa was aware of her prior EEO complaint provides such evidence of animus. It cannot be, however, that all adverse actions taken with awareness of past protected activity are per se discriminatory, nor has Hunter supplied any authority for the proposition that knowledge of past protected activities by itself sufficiently supports an inference of discrimination. There is nothing in the text of the specific memo at issue, moreover, that suggests hostility to Hunter, on the basis of her EEO activity or otherwise.

Indeed, Hunter testified to having good relationships with DeRosa and other officials subsequent to her complaint, and Hunter received a promotion and transfer to FCI Fort Dix subsequent to making her EEO complaint at Fairton. Hunter has thus not set forth sufficient evidence to create any material question of fact regarding whether she has established a prima facie case of discrimination.

III

Turning to Hunter's claim alleging the impropriety of Board's resolution of her wrongful termination claim on non-Title VII grounds, we begin by noting the limited scope of our judicial review. As set forth in 5 U.S.C. § 7703(c), in reviewing decisions of the Board, "the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be-- (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ." As the Supreme Court has further clarified, "the arbitrary and capricious standard is extremely narrow and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions. It is not for the [court] to substitute its own judgment for that of the [Board]. The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001) (citations and internal quotation marks omitted).

On appeal, as before the District Court, Hunter does not dispute that she should have been sanctioned. Rather, she claims that the penalty imposed was unduly harsh as there was a "total absence of evidence" supporting termination. Contrary to Hunter's

8

assertion, however, there is ample evidence in the record supporting her termination. First, Hunter admitted to serious misconduct – including conducting a long-term, improper, epistolary relationship with an inmate and his family.  In the course of this correspondence, Hunter improperly divulged information, some of which was of a nature that could compromise institutional security. Hunter's termination letter, which was presented as evidence to the arbitrator, expressly laid out and considered these and other relevant factors (notably the harm to Hunter's credibility and trustworthiness) that bear on an appropriate sanction, employing terms largely mirroring the list of factors set forth by the Board in Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305-06 (M.S.P.B. Apr. 10, 1981).

Hunter makes much of the fact that Warden DeRosa himself did not testify in person at the arbitration hearing. Hunter, however, has offered no reason why the decision letter justifying the termination decision was not competent evidence that the arbitrator properly considered. Although the lack of supporting testimony may diminish the persuasive force of DeRosa's letter, it is necessary on our review only that the evidence clear the "substantial evidence" threshold. We are satisfied that DeRosa's reasoning articulated in the dismissal letter, coupled with Hunter's own admissions, provided substantial evidence supporting dismissal.

Similarly, Hunter's assertions that her actions did not generate any notoriety (which the warden acknowledged) and that her supervisors did not lose faith in her (as allegedly demonstrated by the fact that she was still allowed to interact with inmates after

9

the investigation) do not call into question the existence of substantial evidence

supporting dismissal.

The judgment of the District Court will be affirmed.