**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0114n.06

Case No. 18-4243

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

MARCEL ELUHU,

    Petitioner,

v.

DEPARTMENT OF VERTERANS
AFFAIRS,

    Respondent.
</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td><td>

**FILED**
Feb 24, 2020
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE MERIT SYSTEMS
PROTECTION BOARD
</td></tr>
</table>

BEFORE: NORRIS, MOORE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Marcel Eluhu appeals a final decision of the Merit Systems Protection Board, determining that his discharge from a part-time position as a physician with the Tennessee Valley Healthcare System was not in retaliation for his sending of a letter which he alleges qualifies as a protected disclosure under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8). Because the Board's decision that Eluhu's letter was not a contributing factor in his discharge is supported by substantial evidence, we **AFFIRM**.

Dr. Marcel Eluhu began working for the Tennessee Valley Healthcare System ("TVHS") of the Department of Veterans Affairs ("the agency") in or around 1996. Eluhu was stationed at one of TVHS' two medical centers, the Alvin C. York campus, in Murfreesboro, Tennessee. From June 30, 2006, until he was terminated, Eluhu worked in the cardiology clinic as a part-time

physician. Eluhu had a fixed worked schedule but was also on call to return to the hospital to care for certain patients outside of his part-time hours.

Around 2010, Eluhu began voicing concerns to his supervisor, Assistant Chief of Medicine, Dr. Dharapuram Venugopal that certain intensivists in the hospital's ICU were improperly refusing to accept cardiac patients into the ICU. Although the issue was initially resolved in Eluhu's favor—intensivists were instructed to admit cardiac patients into the ICU despite any disagreement—disputes arose again when a new Chief of Staff, Dr. John Nadeau, was hired in January 2017. On February 6, 2017, after raising the issue "several times," Eluhu addressed a letter to one of the pulmonary critical care physicians in the ICU, Dr. Gary Lovelady. Eluhu also sent the letter to Dr. Carl Green, Director of Intensive Care; Dr. Brian Christman, Chief of Medicine; Nadeau; and Venugopal. The letter, reproduced in full states:

> Dear Dr. Lovelady,
>
> Your behavior now and in the past in term of management of cardiac patients at Alvin VA Medical center is not acceptable to me and dangerous to care we provide the veterans.
>
> First of all, you have no right to order me to come and manage patients I transfer to the intensive care unit at your will.
>
> Not only that, I consider your conduct as pure harassment, not genuine consultation.
>
> It is clear to me and other physicians that you (attending physicians in ICU) at Alvin VA Medical Center are not willing or do not feel comfortable on managing cardiac patients.
>
> Every time I want to transfer a cardiac patient from the floor to the ICU, it is a battle.
>
> I however, want to be mindful to you that as attending cardiologist, I do have full authority to transfer cardiac pts to the ICU without begging your permission.
>
> You put so much resistance to the point of making any attending Physician who wants to transfer a cardiac patient to the unit very uncomfortable.
>
> What you need to do as ICU attending, is to dispose several beds as coronary care unit (CCU) as it is done in any hospital I know in the community for the daily

> supervision by the cardiology team at Alvin VA Medical Center as I have proposed more than five years ago to the medical service on a repetitive basis.
>
> As for now and future, just like in the past, whenever I believe that a cardiac patient needs to be transferred to ICU, I will do it with or without your permission and it is your responsibility and obligation to provide the proper care. If you do not feel comfortable, you should take the issue with the chef of medical service or the hospital administration that they provide you with a daily cardiology service in your unit, which I am more than willing to do.
>
> I also am requesting all the administration authorities to address this issue on urgent basis since such behavior has become intolerant to me.

Initial Board Dec., AR. 1, at 5-6 (errors in original).

Three months later, on May 8, 2017, Eluhu was discharged from his position. Three days after his termination, Eluhu filed a complaint with the Office of Special Counsel ("OSC"), alleging that he was discharged in retaliation for making a protected disclosure. Eluhu contends that his letter qualifies as a protected disclosure under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and that his whistleblowing activity was a contributing factor in his termination. On December 5, 2017, Eluhu's initial complaint with the OSC was terminated.

On January 29, 2018, Eluhu filed the instant individual right of action requesting corrective action from the Merit Systems Protection Board ("the Board"), a quasi-judicial agency that adjudicates whistleblower complaints and employment disputes involving employees of executive branch agencies. On September 21, 2018, the Board denied Eluhu's action, finding that he failed to prove that he made protected disclosures and that, even if his letter was a protected disclosure, he failed to show that it was a contributing factor in the agency's decision to discharge him. That decision became final on October 26, 2018.

Eluhu challenges both of the Board's findings on appeal. Although the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over "pure" prohibited personnel practice appeals from the Board, *Perry v. MSPB*, 137 S. Ct. 1975, 1981 (2017), the Whistleblower

Protection Enhancement Act allows employees to seek judicial review in their appropriate regional circuit in some instances, 5 U.S.C. § 7703(b)(1)(B). Because Eluhu's alleged protected disclosure took place in Tennessee, he now appeals the Board's denial of his request for corrective action directly to this Court.

The Whistleblower Protection Act prohibits an agency from taking a personnel action against an employee for making a protected disclosure. 5 U.S.C. § 2302(b)(8). To establish a retaliatory action in violation of the Act, the employee must establish four elements:

> (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action.

*Chambers v. DOI*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (citing *Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999)). If the employee makes the required showing, there is still no violation of the statute if the agency can prove by clear and convincing evidence that, absent the employee's protected disclosure, it would have taken the same personnel action. 5 U.S.C. § 1221(e)(2); *Chambers*, 602 F.3d at 1376.

We review the Board's decision to determine whether it is supported by "substantial evidence" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 7703(c); *United States Postal Serv. v. Gregory*, 534 U.S. 1, 6 (2001). "The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." *Gregory*, 534 U.S. at 7.

The Board denied Eluhu's request for corrective action because it held that he was unable to establish that his February 6, 2017, letter qualifies as a protected disclosure. Even if Eluhu's letter does qualify as a protected disclosure, however, he must also show that the Board's

decision—that he was unable to establish that the letter was a contributing factor in the agency's decision to terminate his employment by a preponderance of the evidence—is not based on substantial evidence. 5 U.S.C. § 1221(e)(1); *Chambers*, 602 F.3d at 1380. Eluhu may demonstrate this through circumstantial evidence, including evidence that "the official taking the personnel action knew of the disclosure or protected activity" and "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1).

Eluhu has failed to provide evidence that the individual recommending his termination, Nadeau, or the decisionmaker discharging him, Jennifer Vedral-Baron, Director for TVHS, knew of his disclosures.[1] Instead, Eluhu offers circumstantial evidence regarding the timing of Nadeau's investigation into his work absences.[2] Eluhu contends that the timing of his termination, roughly three months after he authored the letter, and the impact it could have had on Nadeau, the newly hired Chief of Staff, are enough to show a retaliatory motive for his discharge. Although Eluhu points to several cases which consider circumstantial evidence of motive, each authority he cites also included significant evidence that the individuals taking the personnel actions were actually aware of the disclosures at issue.[3] Given Eluhu's inability to show that Nadeau or Vedral-Baron

---

[1] Nadeau testified that, although he expects he saw the letter sometime around the date it was sent, App., AR. 16, at 227, he "did not remember seeing it." *Id.* at 218-19. Vedral-Baron testified that she had not seen the letter when it was sent in 2017. *Id.* at 329.

[2] The agency contends that Eluhu was discharged because of his recurring attendance problems. Nadeau testified that he proposed Eluhu's termination because he became aware that Eluhu was not always onsite during his fixed work schedule. App., AR. 16, at 192. He further explained that he had a senior administrative employee monitor if Eluhu was where he was supposed to be over the course of several weeks, and the employee was unable to find Eluhu in the proper locations. *Id.* Venugopal testified that he had to counsel Eluhu regarding his attendance habits "many times," and that Eluhu frequently indicated that he could not comply with such requirements and was considering taking another job. *Id.* at 141-43.

[3] *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1370-71 (Fed. Cir. 2012) (discussing the numerous emails regarding the appellant's whistle-blowing disclosures between the individuals involved in making the personnel action in question); *Chambers v. Dep't of the Interior*, 116 M.S.P.R. 17, 31-32 (2011) (addressing evidence that the individual taking the personnel action was aware of the disclosure at the time of the action); *Philips v. Dep't of Transp.*, 113

had any knowledge of his letter, his questionable attendance history as a practical reason for his discharge, and the fact that his circumstantial evidence consists of nothing more than unsubstantiated claims, the Board's decision that his letter was not a contributing factor in the agency's decision to discharge him is supported by substantial evidence.

Finally, because Eluhu's letter was not a contributing factor in his discharge, we need not address whether it qualifies as a protected disclosure or whether the agency has proven that it would have taken the same action absent the disclosure. For the foregoing reasons, we **AFFIRM**.

---

M.S.P.R. 73, 82-83 (2010) (highlighting an admission from the individual taking the personnel action that he knew that the general subject of the disclosure was "lack of institutional control and oversight").