**OREGON NATURAL DESERT ASSOCIATION, Plaintiff,**

v.

**Thomas E. RASMUSSEN, et al., Defendants.**

**No. CV 05–1616 AS.**

United States District Court, D. Oregon.

Sept. 6, 2006.

Peter M. Lacy, Kristin F. Ruether, Oregon Natural Desert Association, Portland, OR, for Plaintiffs.

Karin J. Immergut, United States Attorney, Stephen Odell, Asst. U.S. Attorney, Bradley Grenham, Special Asst. Attorney General, Office of the Regional Solicitor, Portland, OR, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION

MOSMAN, District Judge.

On April 20, 2006, Magistrate Judge Ashmanskas issued Findings and Recommendation ("F & R") (# 73) in the above-captioned case recommending that plaintiff's motion for summary judgment (# 23) be granted in part and denied in part and that defendants' cross-motion for summary judgment (# 38) be granted in part and denied in part. On May 30, 2006, both parties filed objections (# 78 and # 79) to the F & R. On June 23, 2006, plaintiff filed a response (# 80) to defendants' objections. Defendants filed a response (# 83) to plaintiff's objections on June 27, 2006.

In conducting my review of the F & R, I apply the following standard. The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F & R to which no objections are addressed. *See Thomas v. Arn,*

474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F & R depends on whether or not objections have been filed, in either case, the court is free to accept, reject, or modify any of the magistrate judge's F & R. 28 U.S.C. § 636(b)(1)(C).

After reviewing the F & R, objections, and relevant pleadings, the court agrees with Judge Ashmanskas' recommendation to grant in part and deny in part plaintiff's motion for summary judgment (# 23) and to grant in part and deny in part defendants' cross-motion for summary judgment (# 38). Accordingly, the court ADOPTS the F & R in its entirety without modification.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ASHMANSKAS, United States Magistrate Judge.

Plaintiff Oregon Natural Desert Association (ONDA) brings this action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701, alleging defendants Bureau of Land Management *et al.* (BLM) violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.,* and the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701 *et seq.,* when they issued a final decision on June 13, 2005, implementing the East–West Gulch Projects Environmental Assessment (East–West Gulch Projects EA) on the Beaty Butte Allotment in south-central Oregon.

The matters before the court are ONDA's motion for summary judgment (doc. # 23), BLM's cross-motion for summary judgment (doc. # 38), BLM's motion to strike (doc # 43), and ONDA's motion to strike reply in support of BLM's motion to strike (doc. # 65).

For the reasons that follow, the court **DENIES** BLM's motion to strike, **DENIES** ONDA's motion to strike, recommends that ONDA's motion for summary judgment be **GRANTED in part** and **DENIED in part**, and recommends that BLM's cross-motion for summary judgment be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### Overview of BLM's Management Responsibilities.

BLM's Lakeview District in south-central Oregon administers and manages more than 3.5 million acres of public lands in the high desert of that region. The Beaty Butte Allotment is one of a number of administrative units in the Lakeview District through which BLM manages livestock grazing.

BLM manages public lands within the Lakeview District at several levels. On the broadest level, BLM manages the Lakeview District as a whole under the Lakeview Resource Management Plan (RMP), a land use plan issued in November 2003. BLM had issued an Environmental Impact Statement (EIS) addressing environmental impacts of the RMP in January 2003.

On a narrower scale, BLM manages the Beaty Butte Allotment under the Beaty Butte Allotment Management Plan (AMP), which was issued following the preparation of an EIS in June 1998.

BLM also manages parcels of land within the Beaty Butte Allotment and other allotments in the Lakeview District on a project-by-project basis.

### The Beaty Butte Allotment and the East–West Gulch.

The public lands on the Beaty Butte Allotment provide a corridor of relatively intact sagebrush-steppe habitat linking the

Hart Mountain National Antelope Refuge with the Sheldon National Wildlife Range. The area on and around Beaty Butte Allotment supports a variety of wildlife and includes winter and migratory habitat for pronghorn antelope, and habitat for sage grouse, pygmy rabbits, western big-eared bats, ferruginous hawks, burrowing owls, desert and short-horned lizards, and other mammals and birds.

The Beaty Butte Allotment is divided into pastures, and grazing is permitted or not on a pasture-by-pasture basis annually. The East–West Gulch is located in the north pasture of the southern base of the Beaty Butte Allotment.

### BLM's Public Land Inventory Responsibilities

Under FLPMA, by 1991, BLM was required to inventory all roadless areas on public lands over 5000 acres that it managed, to identify those that have "wilderness characteristics," and "from time to time" to report on whether such areas, known as "Wilderness Study Areas" (WSAs), should be preserved as wilderness. 43 U.S.C. § 1782(a). FLPMA also mandates that, after the completion of the initial inventory, BLM must maintain an inventory of all public lands "on a continuing basis," to "be kept current so as to reflect changes in conditions and to identify new and emerging resource and other values." 43 U.S.C. § 1711(a).

BLM completed the required inventory of wilderness areas within the Beaty Butte Allotment (Oregon Wilderness Final EIS) in 1989. BLM identified six WSAs that had wilderness values, comprising about 208,000 of the 507,000 acres of land in the Beaty Butte Allotment. BLM, however, did not identify any WSAs within the East–West Gulch.

The overarching issue in this case is whether BLM has fulfilled its responsibilities to perform a continuing inventory, and

as a result, to identify and include additional WSAs within the East–West Gulch.

### BLM's East–West Gulch Environmental Assessment (EA).

In 1998, BLM found the area in the East–West Gulch was failing to meet federal rangeland health standards because the channel within the two gulches had been down-cut for at least 40 years and the area was "at functional risk with a downward trend." AR Tab 35A, p. 1. BLM determined the channel would "need to widen and form a new floodplain" to achieve "proper functioning condition." *Id.* BLM also concluded, however, that continued livestock use would not impede floodplain developments and was not a significant factor for failing to meet the rangeland health standards. *Id.*

In 2000, riparian vegetation in part of the East–West Gulch was damaged by a wildfire. Some natural recovery of vegetation has taken place since then but has been "hindered in localized areas by concentrated cattle use during permitted years of cattle grazing." *Id.*

In 2003, BLM resource specialists, including a soil scientist, hydrologist, botanist, and rangeland management and wildlife biologists, assessed conditions in the Beaty Butte Allotment and issued a report on October 8, 2003, stating that "native plant communities in the bulk of the allotment appeared to be in the range of good to excellent condition." AR Tab 19, p. 4. Nevertheless, the report noted "[p]roblems associated with livestock grazing" in the East–West Gulch area. *Id.* The report concluded that "improving livestock distribution through off-site water developments and additional fencing or herding are essential in restoring and/or maintaining watershed function and riparian/wetland and upland conditions." *Id.*, p. 6.

To address the issues raised in the report, BLM developed an "action plan" and,

in July 2004, prepared a NEPA environmental assessment setting out alternative courses of action. AR Tab 29A. A revised assessment (East–West Gulch Projects EA) was issued on February 7, 2005.[1] AR Tab 35A. BLM stated the "main purpose of the proposed action is to stabilize the channel banks in East Gulch and to provide faster vegetation recovery in both gulches." *Id.*, p. 1.

On March 29, 2005, BLM issued a notice of proposed decision selecting Alternative Four, which includes construction of 13.25 miles of new barbed-wire fence, three pipelines totaling 7.75 miles in length, six new watering troughs, plus another existing trough moved to a new location, and two new steel water storage tanks. AR Tab 38, pp. 7–8. The fence is designed to keep livestock out of most of the riparian area of the East Gulch. The pipelines, troughs, and water tanks are intended to move water for livestock away from riparian areas, thereby preventing concentrations of livestock in those areas. In addition, BLM plans to close and rehabilitate a road in the East Gulch, moving 1.2 miles of the road to a ridgeline away from the gulch. *Id.*

On March 9, 2005, and April 1, 2005, ONDA presented to BLM its own wilderness inventory (Spaulding Wilderness Inventory), using a protocol previously established by BLM in a *"Wilderness Inventory Study Handbook."* AR Tab 37, 43. BLM had rescinded the handbook in June 2003. The Spaulding Wilderness Inventory purports to provide "significant new data on wilderness resource values and characteristics" in the Lakeview District. AR Tab 43, p. 1. BLM declined to include the additional wilderness areas in its NEPA analysis. AR Tab 45. On May 13, 2005, BLM issued its final decision to implement the East–West Gulch Projects. AR Tab 46.

Actual implementation is scheduled for May or June 2006.

### *ONDA'S CLAIM*

ONDA alleges BLM's final decision to implement the East–West Gulch Projects EA is arbitrary and capricious and, therefore, violates NEPA, because BLM (1) did not consider the full range of alternatives to its proposed action, (2) failed to take a "hard look" at the environmental consequences of its proposed action, (3) refused to analyze the cumulative impacts of its proposed action on sage grouse, pygmy rabbits, and the spread of invasive weeds, and (4) failed to consider significant new information on wilderness resources, *i.e.*, the Spaulding Proposed WSA Addition. In the alternative, ONDA alleges all of the above failures constitute "agency action unlawfully withheld" under the APA, 5 U.S.C. § 706(1).

ONDA also asserts BLM violated FLPMA by failing to maintain a current wilderness inventory, resulting in an undue and unnecessary degradation of the public lands within the East–West Gulch area of the Beaty Butte Allotment.

ONDA seeks an injunction preventing implementation of the East–West Gulch Projects.

### *MOTIONS TO STRIKE*

As a preliminary matter, ONDA moves to strike BLM's reply memorandum in support of its motion to strike because it is untimely. The reply should have been filed on March 23, 2006. Instead, BLM filed it on April 3, 2006. BLM asserts it mistakenly understood that, because argument on the motion to strike would heard at the same time as argument on the summary judgment motions, the briefing deadlines would be the same. In any event, ONDA

---

**1.** The EA is dated February 7, 2004. That appears to be a typographical error.

has not asserted it has been prejudiced by the delay. ONDA's motion to strike BLM's reply is denied.

BLM moves to strike the Declaration of Craig Miller in its entirety and parts of the Declaration of Bill Marlett filed in support of ONDA's motion for summary judgment on the grounds that (1) both Declarations contain extra-record materials, and (2) Marlett did not establish his qualifications to testify on some subject matters.

### Scope of Review under the APA.

■ The scope of judicial review is governed by the APA, 5 U.S.C. § 706. "When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir.2000). *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on other grounds* by *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)(Judicial review under the Administrative Procedure Act "is to be based on the full administrative record that was before the Secretary at the time he made his decision.").

■ The court, however, may consider extra-record materials if they meet any one of the following criteria: (1) they are necessary to determine if the agency considered all relevant factors and explained its decision; (2) the agency relied on documents not in the record; (3) they are necessary to explain technical or complex subject matter; or (4) they show agency bad faith. *Southwest Center for Biological Diversity v. United States Forest Service*, 100 F.3d 1443, 1450 (9th Cir.1996). Post-decision declarations offered to either justify or attack an agency decision already made should not be considered. *Id.*

### Miller Declaration.

Craig Miller is a former officer and current member of ONDA and, as a Geographic Information System (GIS) consultant, has participated in ONDA's wilderness inventory program. His declaration addresses BLM's rejection of ONDA's Spaulding Wilderness Inventory. Specifically, Miller asserts BLM (1) incorrectly applied its definition of "road" for purposes of excluding areas with wilderness values from its wilderness inventory, and (2) improperly rejected the Spaulding Wilderness Inventory as "incomplete and/or inaccurate" even though it constitutes "new information," which, despite any alleged flaws, should have been considered before BLM issued its final decision implementing Alternative 4 of the East–West Gulch Projects EA. Miller sums up his frustration by stating "[t]o ignore all the documentation provided by ONDA's inventory efforts flies in the face of civil discourse."

■ ONDA submitted the Spaulding Wilderness Inventory to BLM after BLM issued its revised East–West Gulch Projects EA in February 2005, but before BLM made its final decision implementing Alternative 4 of the EA in May 2005. The court find's Miller's testimony addresses whether BLM considered all relevant factors in its NEPA analysis, including the extent of wilderness areas in the East–West Gulch and, therefore, is an exception to the rule against considering extra-record materials on the cross-motions for summary judgment.

Accordingly, the court denies BLM's motion to strike Miller's declaration.

### Marlett Declaration.

Bill Marlett is executive director and also a member of ONDA. In his declaration, Marlett explains his background and interest in the Beaty Butte Allotment and

states that he and members of ONDA will be irreparably harmed in their use and enjoyment of the Beaty Butte area if BLM implements the actions described in Alternative 4 of the East–West Gulch Projects EA. In addition, Marlett offers his opinion regarding, *inter alia,* the adverse impacts of alleged over-grazing of livestock on public lands in the area, and the value of ONDA's "Spaulding Wilderness Inventory" in establishing that BLM has failed to consider new information regarding the scope and extent of wilderness areas in the Beaty Butte Allotment.

BLM moves to strike paragraphs 9–12 and 15 of Marlett's declaration because they include expert opinions Marlett is not qualified to offer. The court agrees that Marlett's statement of his responsibilities at ONDA and his concerns regarding specific wilderness issues in the Beaty Butte Allotment do not qualify him as an expert who has the "specialized knowledge" to offer opinions on the scientific and technical matters at issue in this case.

■ Nevertheless, Marlett's declaration is admissible to establish ONDA's standing to bring this action. *See Friends of the Earth v. Laidlaw,* 528 U.S. 167, 181, 183–84, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). (To establish standing to challenge agency action, the declarant must demonstrate that he has "reasonable concerns about the effects of ... [the agency action on his] recreational, aesthetic, and economic interests.") Courts "assume the truth of the evidence proffered by plaintiffs" solely for the purpose of establishing standing. *Bonnichsen v. U.S. Dep't of Army,* 969 F.Supp. 628, 632 (D.Or.1997). "The issue of standing, [however], should not be confused with the merits of the underlying action." *Id.,* at 637, n. 5.

Accordingly, the court denies BLM's motion to strike parts of Marlett's declaration, but will consider the declaration in its entirety only for the purpose of establishing ONDA's standing to bring this action.[2]

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

The ultimate question on these motions is whether BLM's final decision adopting Alternative 4 of the East–West Gulch Projects EA complies with NEPA. In answering that question, the most significant issue is the adequacy of BLM's wilderness inventory.

### Summary Judgment Standard.

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). As here, where the court is reviewing the record pursuant to the Administrative Procedure Act, summary judgment is appropriate for deciding the legal issue of whether the agency could reasonably have found the facts as it did. *Occidental Engineering Co. v. Immigration and Naturalization Service,* 753 F.2d 766, 770 (9th Cir.1985).

### Review of Agency Actions.

Claims brought under both NEPA and FLPMA are reviewable under the APA. 5 U.S.C. § 706(2)(A); *ONRC Action v. Bureau of Land Management,* 150 F.3d 1132, 1135 (9th Cir.1998)("A party alleging violations of NEPA and FLPMA can bring an action under the APA challenging an 'agency action.' ").

■ Under the APA, the court reviews the agency action to determine whether it is arbitrary and capricious and may not set it aside unless there was no

2. The court notes BLM has asserted the affirmative defense of lack of standing. The merits of that defense, however, are not at issue in the motions now before the court.

rational basis for it. *Friends of the Earth v. Hintz,* 800 F.2d 822, 831 (9th Cir.1986). The arbitrary and capricious standard is appropriate for resolution of factual disputes implicating substantial agency expertise. *Ninilchik Traditional Council v. United States,* 227 F.3d 1186, 1194 (9th Cir.2000). Review under the standard is narrow and the reviewing court may not substitute its judgment for that of the agency. *See United States Postal Service v. Gregory,* 534 U.S. 1, 122 S.Ct. 431, 434, 151 L.Ed.2d 323 (2001). The agency, however, must articulate a rational connection between the facts and law found and the conclusions made. *See Midwater Trawlers Co-op v. Department of Commerce,* 282 F.3d 710, 716 (9th Cir.2002). Thus, the reviewing court must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Hells Canyon Alliance v. United States Forest Serv.,* 227 F.3d 1170, 1177 (9th Cir.2000). For example, the court may reverse if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise. *See Pacific Coast Fed. of Fishermen's Ass'n, Inc. v. National Marine Fisheries Serv.,* 265 F.3d 1028, 1034 (9th Cir.2001). Thus, the inquiry, though narrow, must be searching and careful. *Ninilchik,* 227 F.3d at 1194.

■ "Deference to an agency's technical expertise and experience is particularly warranted with respect to questions involving ... scientific matter." *United States v. Alpine Land and Reservoir Co.,* 887 F.2d 207, 213 (9th Cir.1989), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112

L.Ed.2d 35 (1990). Nevertheless, the "presumption of agency expertise may be rebutted if the decisions, even though based on scientific expertise, are not reasoned." *Greenpeace v. NMFS,* 80 F.Supp.2d 1137, 1147 (W.D.Wash.2000).

### *Statutory Requirements.*

### NEPA.

"The goal of NEPA is two-fold: (1) to ensure the agency will have detailed information on significant environmental impacts when it makes its decisions; and (2) to guarantee that this information will be available to a larger audience. NEPA's goal is satisfied once this information is properly disclosed; thus, NEPA exists to ensure a process, not to ensure any result." *Inland Empire Public Lands Council v. U.S. Forest Service,* 88 F.3d 754, 758 (9th Cir.1996); 42 U.S.C. § 4332(2)(C). "[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Sierra Club v. Espy,* 38 F.3d 792, 796 (5th Cir.1994).

An agency may prepare an Environmental Assessment (EA) to determine whether a proposed action significantly affects the environment, thereby requiring the preparation of an environmental impact statement (EIS). 40 C.F.R. § 1501.4(a), 1508.9(a). "If, pursuant to the EA, an agency determines that an EIS is not required under applicable CEQ[3] regulations, it must issue a 'finding of no significant impact' (FONSI), which briefly presents the reasons why the proposed agency action will not have a significant impact on the human environment. See §§ 1501.4(e), 1508.13." *Department of Transp. v. Public Citizen,* 541 U.S. 752, 757–758, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004).

---

**3.** Council on Environmental Quality.

In summary, BLM is required to take a "hard look" at the environmental consequences of its actions. *Idaho Sporting Congress, Inc. v. Rittenhouse,* 305 F.3d 957, (9th Cir.2002). In addition, NEPA requires the East–West Gulch Projects EA to include an analysis of the cumulative impacts of the project together with all past, present and reasonably foreseeable future actions. *See* 40 C.F.R. §§ 1508.7, 1508.27(b)(7); *Hall v. Norton,* 266 F.3d 969, 978 (9th Cir.2001). Cumulative impacts include impacts that "can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

**FLPMA.**

FLPMA "established a policy in favor of retaining public lands for multiple use management." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 877, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Multiple use management requires "striking a balance among the many competing uses to which land can be put, 'including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and [uses serving] natural scenic, scientific and historical values.'" *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 58, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004), *citing* 43 U.S.C. § 1702(c).

FLPMA requires BLM, in its role as a manger of public lands, "to prepare and maintain on a continuing basis an inventory of all public lands and their resources and other values … giving priority to areas of critical environmental concern. This inventory shall be kept current so as to reflect changes in conditions and to identify new and emerging resource and other values." 43 U.S.C. § 1711(a). As part of its management duties, BLM must "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

*Discussion.*

**NEPA Violations.**

ONDA seeks summary judgment that BLM violated NEPA by (1) failing to consider the impacts of the East–West Gulch Projects on the wilderness in the area, (2) failing to consider an adequate range of alternative actions, and (3) failing to consider cumulative impacts of the projects.

*Wilderness Impacts.*

ONDA argues BLM failed to address the impact of the BLM's proposed projects on wilderness resources in the East–West Gulch. BLM, however, asserts its original inventory of the project area established there are no wilderness resources there to be impacted. Accordingly, BLM concludes there is no wilderness present in the area that could be impacted by the projects.

ONDA, however, contends that there has been a change of circumstances in the project area since BLM inventoried it years ago, that BLM had a continuing duty to maintain an accurate inventory of wilderness values in the area, particularly in light of the changed circumstances, and that BLM has not properly carried out that duty. Consequently, ONDA inventoried the area and presented the resulting Spaulding Wilderness Inventory to BLM during the public comment period preceding BLM's final decision on the East–West Gulch Projects. BLM, however, rejected the inventory.

BLM argues "it is not required to revisit its wilderness inventory or the Lakeview RMP designations in the analysis for every subsequent site-specific project, such as the East–West Gulch Projects." In any event, BLM asserts it "used the most current data and inventories to develop the resource descriptions in the [January 2003] Lakeview RMP/EIS."

The record reflects ONDA raised similar objections to BLM's lack of an updated inventory in 2003 when the broader Lakeview RMP was developed. Then, BLM responded that it had conducted a "one-time review" of wilderness in Oregon in 1992, and "has no policy to require the re-analysis" of the suitability of an area "for preservation as wilderness." AR Tab 20B, p. 8.

The record also reflects that, in the East–West Gulch Projects EA issued on February 7, 2005, BLM did not address wilderness issues at all because wilderness "values or issues are either not present in the area or would not be significantly affected by any of the alternatives considered." AR Tab 35A, p. 19.

In response to ONDA's inventory analysis, BLM noted the wilderness issue was a "new issue" that ONDA had "not raised during previous public review opportunities for this project." AR Tab 39, p. 4. In addition, BLM reiterated its previous position that a "one-time" inventory had previously been done, and that it was "not appropriate to consider new wilderness inventory information at the project level." *Id.* Nevertheless, BLM stated it would "place your inventory information on file and consider it during future land use planning activities." *Id.*

On this record, the court agrees with ONDA that no significant wilderness analysis was done for the East–West Gulch Projects EA. Moreover, it appears the only wilderness inventory performed by BLM took place in 1992.

In *Center for Biological Diversity v. BLM*, C 03–02509 SI, 2006 WL 662735 (N.D.Cal. March 14, 2006), the court specifically addressed BLM's obligation to maintain a current inventory of resources on public lands under BLM's management. In that case, BLM issued a Recreation Area Management Plan (RAMP) for the Imperial Sand Dunes Recreation Area.

The plaintiff alleged BLM violated FLPMA because it failed to maintain a current inventory of species within a dunes area under BLM's management. The court agreed with BLM that it did not need to maintain a current inventory of every species in the area. Nevertheless, the court stated:

> [T]he problem here is not that BLM did not update the inventory data so that it was exhaustive and current; to the contrary, the problem lies with the fact that, despite extensive evidence in the record indicating the existence of numerous other species . . ., the BLM nevertheless approved the RAMP which does not take these species into consideration . . . . .

> The Court concludes it was arbitrary and capricious to approve the RAMP with such obviously outdated and inadequate inventories.

2006 WL 662735 *46.

■ The BLM's East–West Gulch Projects EA has the same problem. In an environmental assessment under NEPA, BLM is required to take a "hard look" at the a proposed action's impact on the surrounding environment. BLM did not take a hard look at the wilderness issue here. It used the same arguments to reject ONDA's concerns regarding wilderness areas in the East–West Gulch that it used in rejecting the same concerns regarding the broader Beaty Butte Allotment EIS issued two years earlier. With a broad brush, BLM dismissed ONDA's inventory by finding ONDA's "inventory specific to the three former wilderness inventory units in the vicinity of the project area, even when considered as a larger single unit, is incomplete and/or inaccurate." AR v. 2, Tab 46, p. 7. Whether or not ONDA's inventory was complete or not is not the point. ONDA did not have a responsibility to provide accurate information regarding

any changes to the wilderness characteristics in the East–West Gulch before the EA was issued. BLM did.

The court finds BLM did not meet its obligation under NEPA simply by reviewing and critiquing ONDA's work product. It was obligated under NEPA to consider whether there were changes in or additions to the wilderness values within the East–West Gulch, and whether the proposed action in that area might negatively impact those wilderness values, if they exist. The court finds BLM did not meet that obligation by relying on the one-time inventory review conducted in 1992. Such reliance is not consistent with its statutory obligation to engage in a continuing inventory so as to be current on changing conditions and wilderness values. 43 U.S.C. § 1711(a). BLM's issuance of the East–West Gulch Projects EA and the accompanying Finding of No Substantial Impact (FONSI) in the absence of current information on wilderness values was arbitrary and capricious, and, therefore, was in violation of NEPA and the APA.

*Consideration of Alternative Actions.*

The East–West Gulch Projects EA contain four alternative proposed actions to achieve the desired result of improving riparian vegetation conditions and habitat in the East–West Gulch while allowing livestock grazing to continue at permitted levels: (1) taking no action; (2) realigning a road, installing additional fences to exclude livestock from riparian vegetation that needed time to recover, and installing pipelines to provide water to livestock that are excluded from water because of the fences; (3) taking similar steps as described in alternative 2, but relying on a different type of fencing; and (4) combining many of the features of alternatives 2 and 3, and adding a storage tank at each trough, but reducing the riparian area to be enclosed by the fencing.

ONDA contends BLM failed to consider an adequate range of alternatives because it did not consider reducing livestock grazing or increasing livestock herding.

■ An environmental assessment must "consider[s] a reasonable range of alternatives given the objectives of the [p]roject." *Akiak Native Community v. U.S. Postal Service,* 213 F.3d 1140, 1148 (9th Cir.2000). The agency need not consider alternatives that would not serve this purpose. *See, e.g., City of Angoon v. Hodel,* 803 F.2d 1016, 1021 (9th Cir.1986) (per curiam) ("When the purpose is to accomplish one thing, it makes no sense to consider the alternative ways by which another thing might be achieved."); *Trout Unlimited v. Morton,* 509 F.2d 1276, 1286 (9th Cir.1974) ("The range of alternatives that must be considered need not extend beyond those reasonably related to the purposes of the project.").

The record reflects BLM considered whether improved management of livestock grazing was necessary for riparian vegetation and habitat to recover. ONDA, however, asserts BLM should have considered all reasonable alternatives including herding and grazing limitations in greater depth. In the East–West Gulch Projects EA, BLM addressed no-grazing and herding alternatives, but only briefly. Grazing limitations were eliminated from further study because they had been fully considered and rejected in the Lakeview RMP and Beaty Butte AMP. AR Tab 35A, p. 5. *See also* AR Tab 1A, p. 25 (Beaty Butte AMP and EIS–Alternative 5 No–Grazing); Tab 8A, pp. 3–38 to 3–40, 3–44 to 3–48. Herding was eliminated because "it was not practical or feasible from a technical and economic standpoint." AR Tab 35A, p. 5.

The essence of ONDA's argument is that if livestock-grazing is causing damage to riparian habitat, the most reasonable

alternative action is to stop or reduce live-stock grazing. By contrast, placing additional structures such as fences and pipelines and realigning roads on public lands requires costly construction and ongoing maintenance, and reduces the naturalness of the area, thereby potentially impacting future wilderness designation.

■ BLM, however, was not required to "consider alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for the management of the area." *Headwaters, Inc. v. BLM,* 914 F.2d 1174, 1180 (9th Cir.1990). BLM's management of the East–West Gulch, Beaty Butte Allotment, and the Lakeview District as a whole, has many objectives, one of which is to "provide a predictable sustained flow of economic benefits within the capability of the planning area ecosystem." AR Tab 8A, p. 301. On balance, the record reflects BLM's choice of alternatives in the East–West Gulch Projects EA were reasonably intended to achieve both the limited purposes of the East–West Gulch Projects, and the broader land use purposes set out in the Lakeview RMP and the Beaty Butte Allotment AMP.

Accordingly, the court finds BLM's failure to discuss potential alternatives involving grazing limitations and herding in greater depth in the East–West Gulch Projects EA was not arbitrary and capricious.

*Consideration of Cumulative Impacts.*

ONDA asserts BLM's East–West Gulch Projects EA does not address the cumulative effects of the dewatering of springs and wet areas on sage grouse and pygmy rabbits, or of the resulting habitat destruction and landscape fragmentation. In addition, ONDA contends BLM never addresses the harm to the wilderness resource throughout the entire Lakeview District as a result of the fragmentation of the landscape. Specifically, ONDA suggests the East–West Gulch Projects will

further inhibit future consideration of the area as a wilderness resource.

BLM asserts its cumulative effects analysis in the East–West Gulch Projects EA was tiered to the "Environmental Consequences" analysis set out in detail in Chapter 4 of the Beaty Butte Allotment AMP/ EIS, which included discussions on the impacts on pygmy rabbits and sage grouse. AR Tab 1A, p. 66. In addition, to a lesser extent, the East–West Gulch Projects EA addresses the impacts of the potential alternatives on pymgy rabbits— Alternatives 1, 2, and 3 would have no impact and the impacts from Alternative 4 would be "minimized or eliminated as described in Alternatives 2 and 3." AR Tab 35A, pp. 30–31.

■ On this record, the court finds BLM adequately addressed the cumulative impacts of its proposed actions in the East–West Gulch Projects EA, and appropriately tiered its analysis to the Beaty Butte Allotment AMP/EIS. *See Native Ecosystems Council v. Dombeck,* 304 F.3d 886, 895–6 (9th Cir.2002)("An EA may be deficient if it fails to include a cumulative impact analysis or to tier to an EIS that reflects such an analysis").

Accordingly, the court concludes ONDA is entitled to summary judgment that BLM violated NEPA on the sole ground that BLM did not have sufficient current information on wilderness values in the East–West Gulch to make an informed, adequate determination of the environmental impact of the East–West Gulch Projects on wilderness values.

**FLPMA Violation.**

ONDA asserts BLM violated FLPMA by failing to maintain a current inventory of wilderness values in the East–West Gulch. BLM counters that it has authority to inventory public lands for land use

purposes, and has discretion as to when and where it will undertake the inventory.

■ The same claim was made in *Center for Biological Diversity v. BLM, supra.* There the court noted that "directives in management plans, such as directives to monitor and study species, are not legally enforceable." 2006 WL 662735 *46 (citing *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 69–70, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004)). The court, as noted, concluded that the problem was not the failure to conduct the inventory of a species as required by FLPMA, but the failure to have sufficient current information on a species to make a reasoned decision regarding environmental impacts. That rationale applies equally here. As part of its obligation under NEPA to conduct an environmental assessment of the impacts of the East–West Gulch Projects, BLM needed current and accurate information on wilderness values. The court has found BLM did not have such information. As a consequence, the final decision to implement the East–West Gulch Projects was arbitrary and capricious. ONDA's right of action against BLM arising from that failure stems from NEPA, not FLPMA.

Accordingly, the court concludes BLM is entitled to summary judgment on ONDA's FLPMA claim.

### CONCLUSION

Based on the foregoing, the court **DENIES** BLM's motion to strike (doc. # 43), **DENIES** ONDA's motion to strike (doc. # 65), recommends that ONDA's motion for summary judgment (doc. # 23) be **GRANTED in part** and **DENIED in part**, and recommends that BLM's cross-motion for summary judgment (doc. # 38) be **GRANTED in part** and **DENIED in part**.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due May 15, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.