FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BUILDING INDUSTRY ASSOCIATION OF THE BAY AREA; BAY PLANNING COALITION, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF COMMERCE; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; UNITED STATES NATIONAL MARINE FISHERIES SERVICE; GARY LOCKE, in his official capacity as Secretary for the United States Department of Commerce; ERIC C. SCHWAAB, in his official capacity as Assistant Administrator for the United States National Marine Fisheries Service, <br> *Defendants-Appellees*, <br><br> CENTER FOR BIOLOGICAL DIVERSITY, <br> *Intervenor-Defendant–Appellee.* | No. 13-15132 <br><br> DC No. 4:11-cv-04118-PJH <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued and Submitted
March 5, 2015—Pasadena, California

Filed July 7, 2015

Before: Harry Pregerson, Barrington D. Parker, Jr.[*],
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Parker

## SUMMARY[**]

### Endangered Species Act

The panel affirmed the district court's summary judgment in favor of the United States Department of Commerce and others in an action brought by property owners under the Endangered Species Act and the Administrative Procedure Act, challenging the designation of critical habitat for a threatened species, the southern distinct population of green sturgeon, and the regulations implementing that designation.

The panel held that, when considering the economic impact of its designation, the National Marine Fisheries Service complied with section 4(b)(2) of the Endangered Species Act and was not required to follow the specific

---

[*] The Honorable Barrington D. Parker, Jr., Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

balancing-of-the-benefits methodology argued for by appellants. The panel also held that section 4(b)(2) establishes a discretionary process by which the agency may exclude areas from designation, but does not set standards for when areas must be excluded from designation. Accordingly, an agency's discretionary decision not to exclude an area from designation is not subject to judicial review. Finally, the panel held that appellants' claim under the National Environmental Policy Act failed because the Act does not apply to critical habitat designations.

## COUNSEL

Theodore Hadzi-Antich (argued) and M. Reed Hopper, Pacific Legal Foundation, Sacramento, Californiam, for Plaintiffs-Appellants.

David C. Shilton (argued), Robert H. Oakley, and Kristen Floom, Attorneys, and Robert G. Dreher, Acting Assistant Attorney General, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for Defendants-Appellees.

Emily Jeffers (argued) and Miyoko Sakashita, Center for Biological Diversity, San Francisco, California, for Intervenor-Defendant–Appellee.

**OPINION**

PARKER, Senior Circuit Judge:

This appeal, arising under the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"), requires us to review the designation of critical habitat for a threatened species–the southern distinct population segment of green sturgeon (the "Southern DPS of green sturgeon")– and the regulations implementing that designation.  The context for this litigation is the impact of the designation on local property owners and on the residential construction industry in the Sacramento-San Joaquin Delta and within the Sacramento River basin of Northern California.  Plaintiffs-Appellants Building Association of the Bay Area ("BIABA") and the Bay Planning Coalition ("BPC") appeal from a judgment of the District Court for the Northern District of California (Phyllis J. Hamilton, J.).  The district court concluded that the agencies' procedures leading to the designation complied with the ESA and the APA, granted Defendants' motions for summary judgment and dismissed the case.

Appellants' main contention on this appeal is that, when designating critical habitat for the Southern DPS of green sturgeon, the National Marine Fisheries Service (the "NMFS") violated section 4(b)(2) of the ESA by failing to follow a specific, obligatory methodology imposed by that section, which required the agency to balance the conservation benefits of designation against the economic benefits of exclusion from designation.  Appellants also contend that NMFS's decision not to exclude certain areas from critical habitat designation is subject to judicial review and that NMFS abused its discretion in not excluding those

areas.  Finally, Appellants challenge the dismissal of their claim that, as part of the designation process, NMFS was required to comply with the National Environmental Policy Act ("NEPA") and failed to do so.

As explained below, we conclude that, when considering the economic impact of its designation, NMFS complied with section 4(b)(2) and was not required to follow the specific balancing-of-the-benefits methodology argued for by Appellants.  We also conclude that section 4(b)(2) establishes a discretionary process by which the agency may exclude areas from designation, but does not set standards for when areas must be excluded from designation.  Accordingly, an agency's discretionary decision not to exclude an area from designation is not subject to judicial review.  Finally, Appellants' NEPA claim fails because NEPA does not apply to critical habitat designations.  *See Bear Valley Mutual Water Co. v. Jewell*, ___F.3d,___, 2015 WL 3894308 (9th Cir. Jun. 25, 2015); *Douglas Cnty. v. Babbitt*, 48 F.3d 1495, 1501–08 (9th Cir. 1995).  Accordingly, we affirm.

## BACKGROUND

## I.

The Southern DPS of green sturgeon is one of two population segments of green sturgeon, a bottom-dwelling fish that occupies coastal estuaries and marine waters from Mexico to Alaska.  Final Rulemaking to Designate Critical Habitat, 74 Fed. Reg. 52,300, 52,301 (Oct. 9, 2009).  The Southern DPS of green sturgeon originates from coastal watersheds south of the Eel River in northwestern California, but the only known spawning population of the species is located in the Sacramento River.  Construction of dams and

associated structures have altered the Southern DPS of green sturgeon's habitat by substantially increasing the fish's spawning area and reducing the success of its spawning. Proposed Threatened Status for Southern Distinct Population of North American Green Sturgeon, 70 Fed. Reg. 17,386, 17,389 (Apr. 6, 2005). The Southern DPS has been further threatened by pesticides, bycatching, poaching and the introduction of new exotic species. *Id.*

Section 4 of the ESA, 16 U.S.C. § 1533, and the implementing regulations, establish the procedures for adding species to the list of threatened and endangered species. *See* 16 U.S.C. § 1531(b) (Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species"). The Secretaries of Commerce and the Interior are responsible for administering the ESA, but have delegated their responsibilities for marine species and anadromous fish to NMFS. *See* 50 C.F.R. § 402.01(b).

In 2001, Intervenor-Appellant, the Center for Biological Diversity (the "CBD"), along with two other organizations, petitioned NMFS to list the green sturgeon as "threatened" or "endangered" under the ESA, and to designate critical habitat. Threatened Status for Southern Distinct Population Segment of North American Green Sturgeon, 71 Fed. Reg. 17,757 (Apr. 7, 2006). After reviewing the petition, NMFS concluded that only the Southern DPS and not the Northern DPS of the green sturgeon was a threatened species. Accordingly, in April 2005, it published a proposed rule listing the Southern DPS as "threatened." *Id.*

Under the ESA, as soon as a species has been listed as either threatened or endangered, agencies are required to consider designating critical habitat. *See* 16 U.S.C. § 1533(b)(6)(C). Critical habitat is defined as "the specific areas within the geographical area occupied by the species . . . on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection." *Id.* § 1532(5)(A)(i). Before designating any particular area as critical habitat, an agency must "tak[e] into consideration the economic impact, the impact on national security, and any other relevant impact," of the designation. *Id.* § 1533(b)(2). The agency "may exclude any area from critical habitat if [it] determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat" unless exclusion will result in the extinction of the species. *Id.* As previously noted, a critical issue on the appeal is whether this balancing requirement is mandatory or discretionary.

In order to develop a conservation program to protect the Southern DPS of green sturgeon, NMFS formed a critical habitat review team, which included representatives from NMFS, the Fish and Wildlife Service and the U.S. Bureau of Reclamation, all of which had experience in green sturgeon biology and in the critical habitat designation process. Proposed Rulemaking to Designate Critical Habitat, 73 Fed. Reg. 52,084, 52,087 (Sept. 8, 2008). NMFS's critical habitat review team performed an economic and biological analysis of every area under consideration for critical habitat designation.

To aid in its analysis of the economic impact of designation, NMFS commissioned a report by Industrial

Economics, Inc.  This report estimated the economic impact on the forty-one areas proposed for designation as critical habitat and, to further refine the analysis, included alternative "low" and "high" impact scenarios.  *See* Final Economic Analysis at 3–5.  Beyond the economic impacts, NMFS also considered the national security impacts and the impacts on Indian lands that would be associated with designating areas as critical habitat.  Final Rulemaking to Designate Critical Habitat, 74 Fed. Reg. 52,300, 52,337–39 (Oct. 9, 2009).

As part of the process of evaluating the benefits of habitat designation, NMFS assigned "conservation values" to the areas it was considering for critical habitat designation, which include "High" for areas deemed to have a high value of promoting conservation of the species (high conservation value or "HCV" areas), "Medium," "Low" or "Ultra-low" areas.  Final Rulemaking, 74 Fed. Reg. at 52,333.  Areas designated as having "Medium" and "Low" conservation values were potentially eligible for exclusion if the estimated economic impacts exceeded certain threshold dollar amounts.  *See* Final ESA Section 4(b)(2) Report.  "Ultra-low" areas were those areas initially categorized as "Low," and where the presence of the Southern DPS of green sturgeon was likely, but not confirmed.

NMFS ultimately decided that all HCV areas were essential to the conservation of the Southern DPS of green sturgeon, which was "unlikely to survive" without these areas, and thus, there was no economic impact that would warrant the exclusion of HCV areas from critical habitat designation.  *See* Final Biological Report.  NMFS excluded fourteen areas from designation.  The areas that were not excluded represented the different habitats needed to support the Southern DPS, including habitats that were important for

spawning, rearing, feeding, and migration. *See* Final Rulemaking, 74 Fed. Reg. at 52,301.

In October 2010, NMFS promulgated a rule designating as critical habitat for the Southern DPS of green sturgeon approximately 11,421 square miles of marine habitat, 897 square miles of estuary habitat and hundreds of additional miles of riverine habitat in Washington, Oregon and California. Final Rulemaking, 74 Fed. Reg. at 52,345–51, codified at 50 C.F.R. § 226.219. The estuary and coastal habitat designations included areas in which the green sturgeon migrated and foraged. *Id.* NMFS found that it was necessary to designate critical habitat for the Southern DPS of green sturgeon because its only confirmed spawning area at that time was the Sacramento River and "the concentration of spawning adults in the Sacramento River place[d] this [population] at [a] . . . greater risk of extinction." Proposed Threatened Status, 70 Fed. Reg. at 17,396. The final rule explained that fourteen areas had been excluded from critical habitat designation, despite being valuable to the preservation of the Southern DPS of green sturgeon, because NMFS had determined that the benefits of exclusion outweighed the benefits of designation. Final Rulemaking, 74 Fed. Reg. at 52331.

## II.

Appellants represent property owners who allege that they have been adversely impacted by NMFS's designations. BIABA is a non-profit association of builders, contractors and related trades and professions involved in the residential construction industry. Appellant BPC is a non-profit organization, representing business and property owners. BPC states that its "mission is to ensure a healthy and

thriving San Francisco Bay area for commerce, recreation and the natural environment." In August 2011, Appellants sued in the Northern District of California asserting claims under the ESA, the APA and NEPA challenging NMFS's critical habitat designations.

The parties filed cross-motions for summary judgment. In November 2012, the district court granted the agencies' and the Intervenor-Appellee's motions for summary judgment and denied the building associations' cross motion. *See Bldg. Indus. Ass'n of the Bay Area et al. v. U.S. Dep't of Comm. et al.*, No. C. 11-4118 PJH, 2012 WL 6002511 (N.D. Cal. Nov. 30, 2012). The district court held that, under section 4(b)(2) of the ESA, NMFS had a nondiscretionary duty to "consider" the economic impact of all critical habitat designations, but was not required to use any particular methodology. The court also held that NMFS had complied with its duty to consider the economic impact of designation for all areas and that NMFS's decision not to exclude areas from critical habitat designation was not subject to judicial review. Finally, the district court held that the building associations did not have prudential standing to bring NEPA claims, but that even if they had standing, NMFS was not required by *Douglas County v. Babbitt* to conduct a NEPA analysis when deciding whether to designate critical habitat. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, we affirm.

## STANDARDS OF REVIEW

"We review the grant of summary judgment de novo, thus reviewing directly the agency's action under the Administrative Procedure Act's (APA) arbitrary and capricious standard." *Gifford Pinchot Task Force v. U.S.*

*Fish & Wildlife Serv.*, 378 F.3d 1059, 1065 (9th Cir. 2004); 5 U.S.C. § 706(2)(A).  When reviewing an order granting summary judgment, "[w]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008) (quoting *Fitzgerald Living Trust (Fitzgerald III) v. United States*, 460 F.3d 1259, 1263 (9th Cir. 2006)).

Under the APA, an agency decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Our review [of agency action] is 'narrow' but 'searching and careful,' . . . and we must ensure that the [agency]'s decisions are based on a consideration of relevant factors and we assess whether there has been a clear error of judgment." *Gifford*, 378 F.3d at 1065 (internal quotation marks and citations omitted). "In general, a court reviewing agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014).  A reviewing court may not substitute its judgment for that of the agency. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 7 (2001).

## ANALYSIS

**I.  NMFS Followed the ESA When Designating Critical Habitat.**

**A.  The ESA Does not Require the Agency to Follow a Specific Methodology When Designating Critical Habitat Under section 4(b)(2).**

Appellants argue that NMFS violated the ESA and the APA because section 4(b)(2) requires an agency to follow a specific "balancing-of-the-benefits" methodology when considering the economic impact of designating critical habitat. According to Appellants, that methodology was not followed here because NMFS designated all HCV areas as critical habitat without properly considering the economic impact of such designations.

Section 4(b)(2) of the ESA provides:

> The Secretary shall designate critical habitat . . . on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact of specifying any particular area as critical habitat. The Secretary may exclude any area from critical habitat if he determines that the benefits of exclusion outweigh the benefits of specifying such area as part of critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical

> habitat will result in the extinction of the species concerned.

16 U.S.C. § 1533(b)(2).

The building associations argue that this provision requires NMFS not only to "tak[e] into consideration" the economic impact of designation, but to balance the economic impact against the environmental benefits of designation. Although the ESA does not expressly define "taking into consideration," Appellants contend that the phrase "shall designate" in the first sentence of section 4(b)(2) creates a nondiscretionary duty to consider the economic impact in all areas before designating critical habitat and the second sentence of section 4(b)(2) modifies the first by setting forth a specific balancing-of-the benefits methodology through which the agency should consider the economic impact of designation.  In essence, Appellants argue that the two sentences comprise one mandate and require the agency to assess whether the economic benefits of excluding an area from designation outweigh the conservation benefits of including the area.

We are not convinced that this interpretation is correct. Instead, we read the statute to provide that, after the agency considers economic impact, the entire exclusionary process is discretionary and there is no particular methodology that the agency must follow.  As we see it, the first sentence of section 4(b)(2) uses the mandatory "shall" to modify what the agency must take "into consideration" (e.g. economic impact or national security impact) and the second sentence uses the discretionary "may" to convey that an agency has the discretion to "exclude any area from critical habitat if [it] determines that the benefits of such exclusion outweigh the

benefits of specifying such area as part of the critical habitat." 16 U.S.C. § 1533(b)(2).  The term "outweigh" in the second sentence limits the agency's discretion to exclude areas from designation.  It does not require the agency to weigh the economic benefits of exclusion against the conservation benefits of inclusion at the first step of the analysis.  The second sentence clarifies that the agency can only make reductions to critical habitat under the exclusion process of the second sentence.

Agency interpretations of this provision also support our reading of it.  An October 2008 legal opinion from the Department of the Interior (which jointly administers the ESA along with the Department of Commerce) analyzes the text and the legislative history of section 4(b)(2), and concludes that there is no specific methodology that an agency must employ when considering whether to exclude an area from critical habitat designation.  This opinion is entitled to *Skidmore* deference.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (agency interpretations and opinions "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").

Although we find the text of the statute sufficiently clear that resorting  to legislative history is not required, we note that the legislative history of the ESA supports our interpretation of section 4(b)(2).  The report of the House Merchant Marine and Fisheries Committee on the Endangered Species Act's 1978 Amendments emphasizes that the weight given to any impact is within the Secretary or agency's discretion and that the agency is "not required to give economics or any other 'relevant impact' predominant consideration in . . . specification of critical habitat."  *See*

H.R. Rep. No. 95–1625 at 17, *reprinted in* 1978 U.S.C.C.A.N. 9453, 9467 (1978).

Finally, none of the cases that have interpreted section 4(b)(2) have found that there is a specific methodology that an agency must employ when considering the economic impact of designation. *Bennett v. Spear*, 520 U.S. 154 (1997), which Appellants cite, is not to the contrary because it did not involve exclusion from critical habitat. Although the case refers to an agency's "obligation" to consider economic impact, this is in reference to the first sentence of section 4(b)(2), which requires only that an agency take economic impact into consideration. *Id.* at 172. Furthermore, when the *Bennett* Court stated that "another objective [of the requirement that each agency use the best scientific and commercial data available] is to avoid needless economic dislocation," it was not construing section 4(b)(2), but section 7(a)(2), which governs interagency cooperation in the context of determining which claims fall within section 7. *Id.* at 176–77. Accordingly, we affirm the district court's conclusion that NMFS did not have to apply a specific balancing-of-the-benefits methodology under section 4(b)(2).

## B. NMFS Took Into Consideration the Economic Impact of Designation in All Areas, Including HCV Areas.

Appellants also argue that NMFS violated the ESA because it did not take into consideration the economic impact of designation for *all* areas under consideration as it failed to consider the economic impact of designation for areas having a high conservation value. This argument is belied by the administrative record. The Final ESA Section 4(b)(2) Report specifically states that "to weigh the benefits

of designation against the benefits of exclusion, NMFS compared the conservation value ratings with the range of low to high annualized economic cost estimates . . . for each area." Final ESA Section 4(b)(2) Report at 16. ER 92. After NMFS identified the specific areas to be analyzed, it considered the economic impacts resulting from critical habitat designation, including impacts on dredging, in-water construction, agriculture, bottom trawl fisheries, dams, commercial shipping, power plants, desalination plants, tidal wave/energy projects and liquefied gas projects. NMFS estimated the annualized economic impact of critical habitat designation for each area under consideration, *including all of the HCV areas*, by assessing the level of economic activity and the level of baseline protection afforded to the Southern DPS of green sturgeon by existing regulations for each economic activity for each area proposed for designation. Economic impacts were further valued at the upper bound of what was expected. Final Rulemaking, 74 Fed. Reg. at 52,333. NMFS then selected dollar thresholds representing the levels at which the potential economic impact associated with a specific area appeared to outweigh the potential conservation benefits of designating that area.

The record thus demonstrates that NMFS considered the economic impacts of designation in HCV areas, but ultimately determined that the HCV areas were critical to the recovery of the Southern DPS of green sturgeon and could not be excluded from designation. Final Rulemaking, 74 Fed. Reg. at, 52,334 (stating that no amount of economic impact, no matter how large, could ever "outweigh the conservation benefits of designation, based on the threatened status of the Southern DPS of green sturgeon and the likelihood that exclusion of areas with a High conservation value would significantly impede conservation of the species"). This

approach is within NMFS's powers under the statute because "without critical habitat areas," the Green Sturgeon was "unlikely to survive." *See* Final Biological Report. Because NMFS is precluded by statute from excluding an area if the "failure to designate such area as critical habitat will result in the extinction of the species concerned," *see* 16 U.S.C. § 1533(b)(2), the text of the ESA itself supports NMFS's decision not to exclude the HCV areas from designation.

A reviewing court's "task is simply to ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *N.W. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003)). We find here that NMFS thoroughly justified its decision to include all HCV areas in the designation of critical habitat.

## II. Appellants' Challenge to NMFS's Decision Not to Exclude Critical Habitat is Not Reviewable.

Appellants also argue that the district court incorrectly held that while decisions to exclude areas from critical habitat designation are reviewable, decisions not to exclude areas are not. Appellants contend that the ESA has the dual objectives of conserving species, while also avoiding needless economic dislocation, and to hold that a key section of the Act was intended to be left to the absolute discretion of NMFS cannot be squared with the ESA's statutory language. This contention is foreclosed by our decision in *Bear Valley*, 2015 WL 3894308, where we held that an agency's decision not to exclude critical habitat is unreviewable.

As we explained in *Bear Valley*, section 701(a)(2) of the APA excludes agency action from judicial review if the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  This occurs when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also Webster v. Doe*, 486 U.S. 592, 599–601 (1988) (court could not review the director's decision to fire any employee because the deference given to the director under the broad language of statute foreclosed any meaningful judicial review).  But the preclusion of judicial review "is not to be lightly inferred"; it must be demonstrated that Congress intended an agency action to be unreviewable.  *Barlow v. Collins*, 397 U.S. 159, 166 (1970).

The first sentence of section 4(b)(2) establishes standards for how an agency should view areas under consideration for designation (or inclusion).  The second sentence, with the use of the word "may," establishes a discretionary process by which the Secretary *may* exclude areas from designation, but does not set standards for when areas *must* be excluded from designation.  *See Bear Valley*, 2015 WL 3894308, at *9; *see also Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 731 F. Supp. 2d 15, 28–29 (D.D.C. 2010) ("[t]he plain reading of the statute fails to provide a standard by which to judge the [agency's] decision not to exclude an area from critical habitat"); *Conservancy of Sw. Fla. v. U.S. Fish and Wildlife Serv.*, 677 F.3d 1073, 1084, n. 16 (11th Cir. 2012) (finding that the use of the word "may" in another section of the ESA precludes the review of an agency's exercise of discretion).  As the most recent proposed policy statement clarifying the regulations for implementing section 4(b)(2) explains: "the decision   to  exclude  is  always

completely discretionary, as the Act states that the Secretaries 'may' exclude areas. In no circumstance is exclusion required under the second sentence of section 4(b)(2)." *See* Policy Regarding Implementation of Section 4(b)(2) of the Endangered Species Act, 79 Fed. Reg. 27,052, 27,054 (May 12, 2014).

Moreover, section 4(b)(2) does not preclude all judicial review of designation decisions. When deciding whether to designate, the agency must follow certain procedures, only the ultimate decision not to exclude a certain area from designation as critical habitat is committed to agency discretion. Here, NMFS adequately followed the first part of section 4(b)(2) in considering economic and other impacts and did not act in an arbitrary or capricious manner or otherwise abuse its discretion in excluding areas from critical habitat designation. Because there is no basis under section 4(b)(2) for reviewing the decision not to exclude areas from designation, there is no basis for reviewing Appellants' claim that this decision was arbitrary and capricious.

## III.    Appellants' NEPA Claim Fails as a Matter of Law

Finally, Plaintiffs-Appellants appeal the district court's dismissal of their claim under section 702 of the APA, which alleged that NMFS failed to follow NEPA by preparing either an Environmental Assessment or an Environmental Impact Statement ("EIS") in connection with the 2009 final rule. If a proposed federal action will significantly affect "the quality of the human environment," NEPA generally requires the agency to provide an EIS. 42 U.S.C. § 4332(C).

This contention is foreclosed by the law of this circuit as well. We have  expressly held that NEPA does not apply to

critical habitat designations.  *See Bear Valley*, 2015 WL 3894308, at \*14*; Douglas Cnty. v. Babbitt*, 48 F.3d 1495, 1501–08 (9th Cir. 1995) (explaining that critical habitat designations are not subject to NEPA because: (1) the ESA displaced the procedural requirements of NEPA with respect to critical habitat designation; (2) NEPA does not apply to actions that do not alter the physical environment; and (3) critical habitat designation serves the purposes of NEPA by protecting the environment from harm due to human impacts); *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1090 (9th Cir. 2014) ("The Secretary's . . . designation under the ESA, 'protects the environment from exactly the kind of human impacts that NEPA is designed to foreclose.'") (quoting *Douglas Cnty.*, 48 F.3d at 1507).  Accordingly, we affirm the district court's decision granting summary judgment in favor of Appellees on the NEPA claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.